UNITED STATES

v.

Gordon A. CUNNINGHAM, Chief Machinery Technician, U.S. Coast Guard.

CGCM 0018.
Docket No. 918.

U.S. Coast Guard Court of Military Review.

13 Jan. 1989.

Trial Counsel: LCDR Michael J. Devine, USCG.

Defense Counsel: LCDR J.J. Vallone, USCG.

Appellate Government Counsel: CDR R.T. Buckingham, USCG.

Appellate Defense Counsel: LCDR James Collin, USCG.

Before, Panel One, BAUM, BRIDGMAN and JOSEPHSON, Appellate Military Judges.

BAUM, Chief Judge:

Appellant, pursuant to a pretrial agreement, pled guilty to various offenses stemming from actions he took while Engineering Petty Officer and Contracting Officer representative aboard a U.S. Coast Guard Cutter undergoing repairs at a private shipyard.[1] After conviction, he was sentenced by the military judge to a bad conduct discharge, confinement for 18 months, forfeiture of all pay and allowances and reduction to E–1, which the convening authority approved and suspended in part. Appellant has assigned two errors before this Court, that the sentence is disproportion-

---

1. Appellant was convicted of one specification of making a false official statement in violation of Article 107, Uniform Code of Military Justice, 10 U.S.C. § 907; one specification of making a false claim in violation of Article 132, Uniform Code of Military Justice, 10 U.S.C. § 932; one specification of improper influence in performance of duties in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 and one specification of violating a general regulation in violation of Article 97, Uniform Code of Military Justice, 10 U.S.C. § 897.

ately severe and that the convening authority's action exceeded the pretrial agreement's sentence limitation.

The record reveals that appellant solicited and obtained a $10,000.00 "loan" from the shipyard company after submitting a false procurement request to the Eighth Coast Guard District project engineer to get additional unneeded ship repairs approved and funds of $12,000.00 obligated for those repairs. Such was done by appellant with a view to later falsifying documents indicating completion of repairs so that the shipyard company would be paid $12,000.00 for work not accomplished. All of this was done as incentive for the company to issue appellant the "loan" check in the amount of $10,000.00.

Appellant now contends that his sentence for these actions is disproportionately severe. As part of this first assignment of error, appellant asks us to take judicial notice of the "crimes and sentence" of a particular Coast Guard flag officer and consider them in assessing whether or not appellant's sentence was appropriate. In support, thereof, appellant offers a copy of a newspaper article concerning non-judicial punishment imposed in 1988 on that Coast Guard Rear Admiral. While we have, on occasion, taken judicial notice of facts not subject to reasonable dispute that are either generally known or capable of accurate and ready determination by resort to unquestioned sources, such sources are not normally newspaper accounts. For that reason, we do not view with favor the submission of newspaper articles of the kind attached to the defense brief as matters for this Court to consider in its review. For the purpose of our decision, however, the essence of the events depicted in the newspaper article have been widely disseminated throughout the Coast Guard and, in fact, were the subject of a "PAO Gram" distributed by the Coast Guard Headquarters Public Affairs Division on 16 June 1988. Accordingly, we will treat the newspaper article submitted as an accurate account for purposes of our decision, particularly since the complete and precise details of the admiral's conduct and the actions

taken thereon are not essential to our determination.

According to the article, the admiral received as non-judicial punishment a $5,000.00 fine and a reprimand for conduct unbecoming an officer and dereliction of duties. The article went on to say that the admiral had been accused of misusing personnel and resources for personal benefit, traveling at government expense for personal reasons and attempting to interfere with a witness to an investigation. Restitution was said to have been made for "the monies he cost the government," believed to be between $2,000.00 and $3,000.00. In further elaboration of the admiral's status, the article indicated that he was Commander of the Eighth Coast Guard District when charges were made and was due to receive his second star, but that he had been removed from the two-star list and was to retire immediately with a loss in retirement benefits of more than $6,000.00 a year for life. We note that the admiral, as Eighth District Commander, was the convening authority who referred appellant's charges to trial. Appellant does not contend, however, that under the accuser concept this officer was, somehow, disqualified from acting as convening authority because of his own offenses, nor do we find such disqualification apparent from what has been presented to us. Instead, appellant argues that his crimes and punishment should be compared with those of the admiral and, upon such comparison, appellant's punishment should be deemed disproportionately severe.

The general rule is that appropriateness of an accused's sentence is to be determined without reference or comparison to sentences in other cases. An exception to this general rule arises when there are other closely related cases with highly disparate sentences. *United States v. Olinger*, 12 M.J. 458 (CMA 1982). As the government points out "there is *no case* and *no sentence* with which he [appellant] wants to compare ... But even if the ... nonjudicial proceedings were to be considered a 'case and sentence,' there is no direct correlation between the two individu-

als and their offenses." (Appellate Government Counsel Brief at 6). We agree. While there may be those within and without the Coast Guard who debate the appropriateness of the non-judicial punishment action referred to, we see absolutely no basis for comparison of such non-judicial punishment with the court-martial conviction and sentence before us. It is simply not a closely related case that warrants comparison. As a separate matter, we also agree with government counsel's contention that selective prosecution or abuse of prosecutorial discretion with respect to appellant has not been established concerning the manner in which the admiral's offenses were resolved. In light of our disposition of these contentions, we have independently assessed the appellant's punishment based solely on the offenses committed by him and the matters presented in extenuation and mitigation, without comparison to the admiral's offenses and punishment. In so doing, we find no merit to appellant's first assignment of error.

■ In his second assignment of error, appellant challenges the convening authority's action as exceeding the sentence limits imposed by the pretrial agreement. That agreement's sentence provision simply provided as follows:

> In consideration of those agreements and promises set forth in the foregoing four (4) pages, the Convening Authority agrees that he will Suspend any sentence of confinement adjudged for a period of one (1) year in accordance with the terms of suspension set forth in enclosure (3).

Appellate Exhibit V

This aspect of the agreement undoubtedly could have been made more definite and certain by explicit statements of what limitations, if any, existed concerning other sentence elements, or a statement of what sentence could be *approved* by the convening authority. We strongly recommend such statements in pretrial agreements to avoid confusion in this area on review. Despite the absence of such provisions, however, and despite egregious shortcomings in the treatment of this matter at trial by the judge and both counsel, we believe that

the intent and understanding of the parties may be discerned from matters of record. We do not agree with appellant that any time there is possible ambiguity with respect to a pretrial agreement that it must be resolved in a manner most favorable to the accused. When there is evidence of record establishing the clear understanding of the parties, we believe that understanding should prevail. See, *United States v. Llewellyn*, 27 M.J. 825 (CGCMR 1989). The view in *Llewellyn, supra*, and here is that our responsibility is to look at the entire record when considering such matters and to resolve the questions in a manner that does not fly in the face of reason.

■ Trial defense counsel petitioned the convening authority for clemency requesting the bad conduct discharge and forfeitures not be approved and that the reduction to E–1 be mitigated to a reduction to E–5. Furthermore, appellant agreed in his plea bargain to immediately request appellate leave if a punitive discharge was adjudged. In accord with that agreement, on the day the sentence was imposed he requested appellate leave which was granted. All of these actions are inconsistent with an understanding, as asserted before this Court, that nothing more than suspended confinement could be approved. To the contrary, we find that all parties understood the convening authority was free to approve any adjudged sentence in its entirety, subject to only one condition, that all confinement would be suspended for a year. The convening authority's action approving the adjudged sentence and suspending all confinement for the requisite period comported with this understanding.

Despite our finding with respect to the agreement's terms, it bears repeating that more complete and explicit sentence provisions, as well as more thorough plea bargain inquiries by judges, are needed. Such actions undoubtedly would reduce the potential for misunderstanding at all levels. In order for such inquiries to be effective, however, counsel must remain alert and provide correct answers to the judge's questions, something that was not done in

this case. Otherwise, inaccurate assessments of the parties' intent and understanding are more likely to result on review.

As a separate matter, appellant, citing *United States v. Hicks*, 26 M.J. 935 (ACMR 1988) argues that approval of forfeiture of all pay and allowances in conjunction with suspended confinement is not permitted. That certainly was the holding in *Hicks, supra*, but we are not persuaded that reduction or disapproval of the total forfeitures is absolutely required when confinement has been suspended. While it is unquestionably error to approve total forfeitures when confinement is not *adjudged*, *United States v. Warner*, 25 M.J. 64 (CMA 1987), we do not believe the holding in *Warner* necessarily extends to the situation where adjudged confinement is approved and suspended on probation, if such suspension is accompanied by appellate leave, a legitimate non-pay status not subject to forfeitures. We believe that the total forfeitures portion of the sentence in this case could have been approved and suspended on probation by the convening authority in the same manner as the confinement. In that event, the suspended forfeitures would be remitted upon satisfactory completion of the probationary period. Violation of the terms of probation would subject the suspended forfeitures to being vacated along with the suspended confinement. The convening authority did not suspend the forfeitures when acting on this record, but, if that action was required by law, we believe this Court would be authorized to order such suspension to meet such a legal requirement despite the general rule that courts of military review are without inherent authority to suspend sentences. See *United States v. Clark*, 16 M.J. 239 (CMA 1983), *United States v. Scott*, 4 M.J. 205 (CMA 1978) and *United States v. Cox*, 22 USCMA 69, 46 CMR 69 (1972). Accordingly, we view suspension of forfeitures by the convening authority, and possibly by this Court, as an alternative to disapproval or reduction of forfeitures.

We believe there is also another method for resolving this issue without reducing or disapproving the forfeitures at this time. The pleadings and record reflect that the appellant has been in a non-pay status on appellate leave ever since action was taken on the sentence by the convening authority. As a result, appellant has not been subject to total forfeiture of pay while in a duty status, the situation which *Warner, supra,* would have us avoid. If, for some reason, the accused were to be recalled from appellate leave and returned to duty, without his suspended confinement being vacated and without the concerns of *Warner, supra,* being met at that time in a manner consistent with administrative regulations and the Uniform Code of Military Justice, then appropriate action could be taken to modify the total forfeitures upon application to this Court for extraordinary relief. In this manner, we believe the accused could be assured of not being placed in a duty-without-pay status, while at the same time allowing for the possibility of forfeiture of all pay and allowances should appellant violate his probation and be ordered into confinement. Notwithstanding the holding in *Hicks, supra* this is the course we choose to take.

After review of this record pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 and, after rejecting the errors assigned, we have determined that the findings and sentence are correct in law and fact and should be approved. Accordingly, the findings of guilty and sentence, as approved and partially suspended below, are affirmed, with express leave to appellant to file with this Court a petition for extraordinary relief, should he be returned to duty unconfined and subject to forfeiture of all pay and allowances.

Judges BRIDGMAN and JOSEPHSON concur.