UNITED STATES

v.

**Charles R. TURNER, Boatswain's Mate Third Class, U.S. Coast Guard.**

**CGCM 0016.
Docket No. 916.**

U.S. Coast Guard Court of
Military Review.

2 March 1989.

Trial Counsel: LCDR Michael J. Devine, USCG.

Assistant Trial Counsel: CDR John A. Unzicker, USCG.

Defense Counsel: LT M. J. Zmaczynski, USCGR.

Appellate Government Counsel: CDR R.T. Buckingham, USCG.

Appellate Defense Counsel: LCDR James Collin, USCG.

Before BAUM, BARRY and GRACE, Appellate Military Judges, Panel Two.

## DECISION

GRACE, Judge:

The appellant was charged with ten specifications of larceny under Charge I, ten specifications of making a false claim and ten specifications of presenting a false claim under Charge II (violations of Articles 121 and 132, Uniform Code of Military Justice), 10 U.S.C. §§ 921 and 932 and other charges and specifications.[1]

The appellant plead guilty to eight of the ten larceny specifications in Charge I and guilty to wrongful appropriation to one of the larceny counts under Additional Charge II. He was tried by a court with members and found guilty, contrary to his pleas, of all of the remaining charges and specifications except the communication of a threat (Additional Charge III). The two remaining larcenies charged in Additional Charge II were reduced to wrongful appropriation by exceptions and substitutions.

The court adjudged the following sentence: a dishonorable discharge, confinement for five years, forfeiture of all pay for sixty months and reduction to pay grade E-1. The sentence was approved and except for the dishonorable discharge, executed by the convening authority.

The appellant assigned two errors.

### I

THE MILITARY JUDGE ERRED IN RULING THAT CHARGE II AND THE SPECIFICATIONS THEREUNDER WERE NOT MULTIPLICIOUS FOR FINDINGS WITH CHARGE I AND IT'S ATTENDANT SPECIFICATIONS AND NOT PROVIDING THE COURT MEMBERS WITH INSTRUCTIONS ON THE ISSUE OF MULTIPLICITY PRIOR TO FINDINGS.

### II

APPELLANT'S SENTENCE IS DISPROPORTIONATELY SEVERE IN THE INSTANT CASE.

The criminal activity in this case is nearly identical with the criminal activity in *United States v. Howard,* 24 M.J. 897 (CGCMR 1987) and since that opinion laid out guidelines for analyzing issues of multiplicity, it will be instructive to revisit that case. The accused, Howard, took invoices from the files, falsified information on the invoices and used them to make out false procurement requests (brown sheets). He then

---

1. One specification of disobedience of an order under Charge III (violation of Article 92, Uniform Code of Military Justice), 10 U.S.C. § 892; two specifications of wrongful disposition of military property under *Additional Charge I* (violation of Article 108, Uniform Code of Military Justice) 10 U.S.C. § 908; larceny of binoculars, a chain saw, and bolt cutters in three specifications under Additional Charge II (violation of Article 121, Uniform Code of Military Justice); and one specification of communication of a threat under *Additional Charge III* (violation of Article 134, Uniform Code of Military Justice), 10 U.S.C. § 934.

submitted the brown sheets to a cashier and received money to make cash purchases. He also had to sign an interim receipt for the money received. He was given a cash subvoucher to be signed by the vendor showing that he was paid for the supplies that were to be picked up. Later, he submitted the false invoices along with the cash subvouchers to the cashier to close out the transaction. He had to forge names of clerks on the subvouchers to make it appear that the clerk had received money for the goods supposedly picked up. No goods were purchased. Howard pocketed the money. The appellants' method in this case was basically the same, except the appellant committed his offenses ten times stealing approximately $1,800.00, while Howard performed his slight of hand 64 times, stealing $13,000.00 from the United States. Howard was sentenced to a bad conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for 17 months and reduction to the lowest pay grade in contrast to appellant's sentence of a dishonorable discharge, confinement for five years, forfeiture of all pay for sixty months and reduction to pay grade E–1.

Although the criminal activity was similar, the Government chose vastly different ways to charge these two defendants. In *Howard, supra,* the Government charged the taking of the invoices with intent to alter, the preparing of false brown sheets (false official statements), larceny by false pretenses (using the brown sheets to get money from the cashier), forgery of cash subvouchers, and presenting false claims (when the forged subvouchers were turned in to clear the claim).

The appellant in the instant case was only charged with the larceny by submission of false brown sheets and the making and presenting of false claims which did not occur until the appellant later submitted the forged cash subvouchers and false invoices to close out the claim.

## A. MULTIPLICITY AT PLEADINGS/FINDINGS STAGE

Both the Government and appellant concede that multiplicity at the pleadings stage of the trial is not an issue here.

■ The appellant has submitted that the specifications under Charge II are multiplicious with the specifications under Charge I for the findings stage of the trial. Before addressing that issue, we must first analyze the relationship *between* the specifications of Charge II, specifications 1 through 10 alleging making a false claim and specifications 11 through 20 alleging presenting a false claim. The Manual for Courts–Martial 1984 (MCM) makes it clear that the making of a false claim and the presenting for payment of a false claim can be separate offenses. That is exactly what the Government argued at trial. Since these two offenses of making and presenting a false claim *could* be separate, the military judge allowed the Government to go forward with proof as to both sets of specifications in accordance with Rule for Courts–Martial (RCM) 907(b)(3)(B). The MCM paragraph 58c(1)(b) says that "[m]aking a claim is a distinct act from presenting it." It defines making a claim as "any act placing the claim in official channels ... even if that act does not amount to presenting a claim." On the other hand, to show presenting a claim that "claim must be presented, directly or indirectly, to some person having authority to pay it." MCM paragraph 58c(2)(b).

The discussion following RCM 907(b)(3)(B) states, "Ordinarily, a specification should not be dismissed for multiplicity before trial unless it clearly alleges the same offense, or one necessarily included therein, as is alleged in another specification. It may be appropriate to dismiss the less serious of any multiplicious specifications after findings have been reached."

■ The judge exercised his discretion and allowed both the making and presenting of a false claim to go to the jury. The Government argued for it claiming possible exigencies of proof. Rarely does a military judge have the luxury of making rulings on the law that are clear cut and indisputable. He made a reasonable decision here. We will not disturb it.

■ However, once the evidence was in and the jury returned its verdict, it was

clear that the making and presenting a false claim specifications were accomplished simultaneously when the appellant handed Petty Officer Dean (one authorized to pay claims) the false invoices and cash subvouchers. The facts showed one offense not two. The military judge should have dismissed one or the other. The table of maximum punishment (MCM, Appendix 12 at page 6) shows that both the making and presenting of a false claim have the same maximum punishment. The military judge should have asked for argument from both trial and defense counsel and, using his discretion, dismissed specifications 1 through 10 or 11 through 20 of Charge II.

■ The appellant also urges that the military judge erred by not giving an instruction similar to the one in *Howard, supra.* Because of the complexity of the Government's case in *Howard, supra,* which included hundreds of documents and over 40 witnesses, we approved of the instructions fashioned by the military judge. He carefully instructed the court members as to each element of each specification. He also instructed as to the relationship between the specifications, even instructing the jury that a verdict of "guilty" to some specifications would require a finding of "not guilty" as to others. By the verdict rendered, it was clear the jury followed the judge's instructions.

Those complexities are not present in this case. The jury had only to apply the evidence to the elements of larceny, making a false claim and presenting a false claim. Once satisfied beyond a reasonable doubt, the jury returned findings of guilty to each offense. We find that a tailored instruction similar to the one in *Howard, supra,* was not required in this case.

■ Now, we must examine the relationship between the larceny of Charge I and the making and presenting false claims of Charge II. There can be no question that the offenses were part of a single transaction. *United States v. Baker,* 14 M.J. 361 (CMA 1983) establishes the test to be applied when multiple offenses, originating from a single transaction, are charged:

First, where one offense contains only elements of, but not all the elements of the other offense; second, where one offense contains different elements as a matter of law from the other offense, but these different elements are fairly embraced in the factual allegations of the other offense and established by evidence introduced at trial.

*Baker,* at 368.

In the case before us the elements of the larceny are:

a. that the accused wrongfully obtained a certain sum of money from the possession of the United States;

b. that the money belonged to the United States;

c. that the money was of a certain specified value; and

d. that the obtaining by the accused was with the intent to permanently deprive the United States of the use and benefit of the money.

The elements of one of the specifications of Charge II, the making of a false claim, are:

a. that the accused made a certain claim against the United States in a certain amount;

b. that the accused did so by preparing an invoice showing receipt of certain supplies and by signing a false name on a cash subvoucher;

c. that the claim was false in that no supplies were received; and

d. that the accused knew that the claim was false.

The elements of presenting a false claim are:

a. that the accused presented for approval and payment a certain claim against the United States, to a person authorized to pay it, in a certain sum;

b. that the accused did so by presenting a cash subvoucher to a Coast Guard Supply Officer;

c. that the claim was false in that none of the supplies listed had been received; and

d. that the accused knew the claim to be false.

Applying the first part of the *Baker* test, there are elements of each offense that are exclusive to that offense. The specifications of Charge II do not contain only elements found within the larceny charge. Therefore, Charge I and its specifications are not multiplicious with the specifications under Charge II using this test.

Applying the second part of the *Baker* test, this Court is satisfied that the facts established by the evidence do not fairly embrace the differing elements between larceny and making or presenting false claims. We are persuaded by the fact that the appellant could have refused the money, turned in the money unspent or purchased the items on the invoice. Although he still could have been convicted of making or presenting a false claim, he would not have been guilty of a larceny. The larceny of Charge I is not multiplicious for findings with the making or presenting a false claim charged in Charge II.

## B. MULTIPLICITY AT SENTENCING STAGE

■ In *Howard, supra,* this Court established no rigid rule to be applied in cases of multiplicity for sentencing. We discussed five options that were readily apparent to us. (There are probably additional options available.) In this case the military judge used an option different from the one used by the military judge in *Howard, supra.*

The judge, here, instructed the military jury that, for sentencing purposes, they were to combine the specifications of making a false claim and presenting a false claim under Charge II with the larceny specifications under Charge I leaving just ten specifications of larceny and other charges and specifications not germane to this issue. This would have been Option 4 in *Howard, supra.* We find the approach taken by the judge was not error in this case. In fact the judge's instructions as to multiplicity for sentencing removed any prejudice the appellant may have suffered as a result of the judge's erroneous ruling

on multiplicity for findings discussed above.

We think it is appropriate here to say a word about the problem that a military judge faces when ruling on multiplicity. In *Howard, supra,* the military judge could have applied Option 4, combining all of the charges into one charge of larceny with 64 specifications. That would have resulted in an instruction that the maximum permissible confinement was approximately 300 years. The jury, showing some compassion and allowing for a strong extenuation and mitigation presentation by the defense, could have adjudged *only* 200 years confinement. Then the military justice system would have to rely on the convening authority or the Courts of Military Review to modify the sentence to one more reasonable and appropriate.

The obvious absurdity of the result in this example highlights the need for some reform in the whole area of multiplicity. This Court would urge that the Code Committee and the Joint Service Committee on Military Justice look carefully at this issue of multiple offenses and multiplicity as it relates to sentencing. Since the United States Supreme Court has ruled recently in the case of *Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) that the federal sentencing guidelines are constitutional, possibly some sort of sentencing guidelines for military courts would assist judges and juries in arriving at fair and just sentences especially where multiple offenses are involved.

## C. SENTENCE APPROPRIATENESS

Now we turn to the sentence adjudged and approved by the convening authority and the appellant's second assignment of error as to severity of the sentence.

■ Appellate defense counsel urges this Court to compare this case with the alleged misconduct of the rear admiral who convened this court-martial. The same argument in this regard was advanced in *United States v. Cunningham,* 27 M.J. 899 (CGCMR 1989), and we reject it for the same reasons expressed in that opinion.

Both appellate counsel urge this Court to make comparisons to other cases within the military justice system. The appellate government counsel during oral argument suggested that the punishment in Coast Guard cases generally is less severe than similar cases in other military services. He maintained that although this sentence is severe for a Coast Guard case, it is right in line with the type of punishment adjudged in the other military services. On the other hand the appellate defense counsel would have us look at other Coast Guard cases (specifically *Howard, supra*).

■ We must determine whether the sentence in this case is appropriate in fact and in law. Article 66(c), Uniform Code of Military Justice. This Court cannot be *required* to consider the sentence in other cases. *United States v. Ballard*, 20 M.J. 282 (CMA 1985). We do not think it necessary to make comparisons to other cases in this instance; therefore, it will not be necessary to apply the test found in *United States v. Capps*, 1 M.J. 1184 (AFCMR 1976) as appellate government counsel suggested.

■ We subscribe to the view expressed by Judge Ferguson in his concurring opinion in *United States v. Judd*, 11 USCMA 164, 28 CMR 388 (1960):

It seems more likely to me that it was envisioned that [judges] would utilize the experience distilled from years of practice in military law to determine whether, in light of the facts surrounding accused's delict, his sentence was appropriate. In short, it was hoped to attain *relative* uniformity rather than an arithmetically averaged sentence.

*Judd*, 394 (emphasis in original).

We are not prepared at this time to say that this Court should do some sort of sentence analysis in each case comparing it to a cross section of similar Coast Guard cases and cases from the other military services. To do so would lead this Court into a morass from which there would be no escape.

■ It is the judgment of this Court that the sentence adjudged was too harsh in relation to the offenses for which the appellant was convicted. Without making *specific* comparisons to other cases, we have determined what we consider to be a fair and just sentence in this case based on our combined experience in military justice, in fulfillment of Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 responsibilities. In spite of the finally approved sentence's similarity to the sentence approved in *Howard, supra*, we made no conscious effort to match this sentence to the one in that case.

Therefore, pursuant to our discussion of Assignment of Error I, Specifications 11 through 20 of Charge II are dismissed. The remainder of the findings of the court below, as approved by the convening authority, are affirmed and the sentence is reassessed and upon reassessment, only so much of the sentence approved below as provides for a bad conduct discharge, confinement for a period of 17 months, forfeiture of all pay for 17 months, and reduction to pay grade E-1 is affirmed. All rights, privileges and property of which the accused has been deprived by virtue of that portion of the sentence not affirmed shall be restored.

Chief Judge BAUM concurs.

BARRY, Judge (concurring):

I concur with the lead opinion and write separately only to amplify the comments in section B. on "Multiplicity at Sentencing Stage".

In *Howard, supra*, the accused faced sentencing for 64 instances of larcenous conduct in which he acquired $13,000.00. This Court set forth five legitimate options for the military judge to consider in resolving the multiplicity issue. These options would set the period of confinement alternatively at: 5 years (option 1–considering all specifications to constitute a single continuing offense), 10 years (option 2–dismissing two of the four charges as multiplicious, and considering each remaining charge as a single continuing offense), 18 years (option 3–all specifications under each charge considered to constitute a single offense), 300 years (option 4–each larce-

ny considered to constitute a separate offense), or 600 years (each "presenting" and each "obtaining" considered to be a separate offense). The military judge apparently found options 4 and 5 wholly disproportionate and elected a more "reasonable" total confinement of 18 years (option 3). This Court approved this exercise of discretion by the military judge. The accused received a sentence of 17 months confinement.

In the instant case the accused was able to accomplish the almost identical crime 10 times before the larcenies were terminated. Accordingly, his maximum exposure (option 5) was 150 years, rather than 600. Exercising his discretion, the military judge apparently adopted option 4 (Howard's "logical" option). The accused then faced a maximum punishment of 52 years. The sentence awarded by the court members included 5 years confinement.

Clearly, there is no simple solution to the military judge's required determination in this type case. In *Howard*, this Court tried to come up with alternative approaches that would provide clear answers in this murky area, but the case before us now highlights the fact that continuing problems remain. The shortcomings are apparent in a sentencing system that allowed for an accused who committed an offense 10 times to be placed at risk for three times as much confinement as an accused who committed virtually the identical crime 64 times. Thus, *Howard* not only does not answer this particular problem, it may compound it by legitimizing five options with drastically different results. The issue bears more scrutiny by those with authority to promulgate new rules and guidelines with respect to authorized sentences, as recommended in the principal opinion. Our action today hopefully resolves any injustice or inequity affecting this case. It does not resolve it for other or future cases.