UNITED STATES, Appellee,

v.

Glen A. BRITTON, Airman First Class, U.S. Air Force, Appellant.

No. 96–1002.
Crim.App. No. 31948.

U.S. Court of Appeals for the Armed Forces.

Argued May 13, 1997.

Decided Sept. 29, 1997.

Effron, J., filed concurring opinion.

Crawford, J., filed dissenting opinion.

For Appellant: *Major Gerald R. Bruce* (argued); *Lieutenant Colonel Kim L. Shef-field, Captain W. Craig Mullen,* and *Captain Jeffrey B. Miller,* USAFR (on brief); *Colonel Jay L. Cohen.*

For Appellee: *Major LeEllen Coacher* (argued); *Colonel Theodore J. Fink* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Captain R. Scott Howard.*

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of rape and assault with intent to commit rape, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 6 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

Our Court specified the following issue: [1]

WHETHER THE CHARGE AND ADDITIONAL CHARGE ARE GREATER AND LESSER INCLUDED OFFENSES AND THEREFORE MULTIPLICIOUS FOR FINDINGS; AND, IF SO, WHETHER APPELLANT HAS WAIVED THE ISSUE.

*Factual Background*

Appellant was charged with rape and assault with intent to commit rape. The rape specification alleges that appellant "did, at or near San Antonio, Texas, between on or about the evening of 23 October 1994 and on or about the morning of 24 October 1994, rape [MJR]." The assault specification alleges that appellant "did, at or near San Antonio, Texas, between on or about the evening of 23 October 1994 and on or about the morning of 24 October 1994, with intent to commit rape, commit an assault upon [MJR] by dragging her down the hall of his residence, throwing her onto his bed and pinning her onto the bed."

Before trial, defense counsel filed a motion for a bill of particulars to make the date, place, and time of the alleged offenses more specific. At trial, defense counsel withdrew the motion and stated on the record that he had been provided sufficient information about the offenses to prepare a defense.

Appellant and Airman First Class (A1C) MJR worked together in the same unit and became friends. They decided to socialize together and on the night of October 23, 1994, MJR went to appellant's house, where they spent some time drinking beer and watching a movie. MJR did not consider it a "date."

MJR testified that while they were sitting on a sofa and watching the movie, appellant put her leg on top of his. She told him to "quit it." Appellant asked MJR to scratch his back and she agreed. Appellant removed his shirt, saying that "he couldn't feel [MJR's] nails." When the movie ended, appellant started a second movie, came back to the sofa, grabbed her neck, and tried to kiss her. MJR testified that she told him to stop; "that we were just friends." She said that she tried to stand up and leave, but appellant grabbed her around the waist and pulled her toward the bedroom and threw her on the bed. She testified that she tried to stand and leave the bedroom but appellant blocked the door, grabbed her around the waist from behind, and they fell backwards onto the bed. She testified that appellant got on top of her, pinned her hands above her head with his left hand and tried to remove her clothes with his right hand. She testified that he pushed her shirt and bra up, pulled her shorts and underwear down, and raped her.

In his pretrial statement to the Air Force Office of Special Investigations (OSI), appellant described the events differently. He told the OSI that as they were sitting on the sofa, he put MJR's leg on top of his and began rubbing it, and she started to rub the inside of his left leg. He said that he asked MJR if she wanted to go to his room and she agreed. They walked to the bedroom together, undressed, and had consensual intercourse. Appellant did not testify at trial.

---

1. We also specified the issue: "Whether the action of the convening authority should be set aside and the case returned to the convening authority in light of the fact that the record contains no indication that new matter attached to the staff judge advocate's addendum to his posttrial recommendation (a statement from the victim) was served on the defense for comment." Appellant has conceded that the new matter was served and that there was no post-trial error. Accordingly, this issue is resolved in favor of the Government.

Defense counsel did not raise the multiplicity issue at trial. The prosecution theory was that the element of force in the rape charge was proven by the acts alleged in the assault charge, and that both charges arose "out of the same incident, the same conduct that occurred on that night." Appellant was convicted, as charged, of both rape and assault with intent to commit rape. At the end of the sentencing hearing, the military judge *sua sponte* announced that he considered the two offenses as a single offense for sentencing.

### Discussion

Appellant contends that assault with intent to commit rape is included in the offense of rape. He further argues that the military judge's failure to dismiss the lesser-included offense is plain error and therefore not waived by appellant's failure to raise the issue at trial. The Government asserts that the offenses are factually separate because the assault with intent to commit rape was completed before the rape. The Government further argues that appellant waived the multiplicity issue by not challenging the specifications at trial.

■ An accused may not be convicted and punished under more than one statute for the same act, if it would be contrary to the intent of Congress. *United States v. Teters*, 37 MJ 370, 373 (CMA 1993). It follows that an accused may not be convicted and punished for two offenses where one is necessarily included in the other, absent congressional intent to permit separate punishments. *See* RCM 307(c)(4), Discussion, Manual for Courts–Martial, United States (1995 ed.) ("In no case should both an offense and a lesser included offense thereof be separately charged."); RCM 907(b)(3), Discussion ("A specification is multiplicious with another if it alleges the same offense, or an offense necessarily included in the other."); *see also Albrecht v. United States*, 273 U.S. 1, 11, 47 S.Ct. 250, 253, 71 L.Ed. 505 (1927) ("There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a trans-

action ... and punishing also the completed transaction.").

Where the intent of Congress is unclear, the Supreme Court uses the "elements" test to determine whether one offense is "necessarily included" in another. "Under this test, one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense." *Schmuck v. United States*, 489 U.S. 705, 716, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989). Our Court applied the elements test in *Teters, supra* at 376, and in *United States v. Foster*, 40 MJ 140, 142–43 (CMA 1994), to determine if one offense was necessarily included in another.

■ The elements test is a rule of statutory construction. *Ball v. United States*, 470 U.S. 856, 861, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740 (1985). It is used to determine the intent of Congress where the legislative history does not display "an overt expression of legislative intent." *See Teters*, 37 MJ at 376–77. Thus, where the intent of Congress is clear, we need not resort to the elements test. *See United States v. Albrecht*, 43 MJ 65, 67 (1995) ("Where Congress somehow has expressed its intent in this regard [as to multiplicity], the question easily is answered.").

■ The legislative history of the treatment of assaults under the UCMJ reflects that Congress specifically rejected efforts to proscribe felonious assaults, that is, assaults with intent to commit specific felonies such as rape, under a separate penal statute. A proposed Article proscribing felonious assaults was not enacted because such assaults were considered to be attempts, punishable under Article 80, UCMJ, 10 USC § 880. *See United States v. Weymouth*, 43 MJ 329, 338–40 (1995) (summarizing legislative history). Notwithstanding Congress' rejection of a felonious-assault statute, such assaults have been prosecuted under Article 134 and have been considered lesser-included offenses of the intended felony. *See* paras. 43d(3), 44d(1), and 45d(1), Part IV, Manual, *supra* (1995 ed.); Appendix 12, Manual for Courts–Martial, United States, 1969 (Revised edition); Appendix 12, Manual for Courts–Mar-

tial, United States, 1951; *United States v. Gomez*, 46 MJ 241 (1997) (prosecution for assault with intent to commit rape not preempted by Article 80). The legislative rejection of a felonious-assault statute suggests that Congress did not intend an accused to be convicted and sentenced for both rape and assault with intent to commit rape, simply because Congress did not intend that the UCMJ expressly prohibit the offense of assault with intent to commit rape. Furthermore, as we pointed out in *Foster*, 40 MJ at 146, "with regard to assaultive and sexual crimes, ... it is usually obvious that Congress could not have intended multiple convictions and multiple punishment for the selfsame act."

Finally, to the extent that congressional intent is ambiguous, resorting to the elements test verifies that the assault of which appellant was convicted is included in the rape and thus is not a separate offense. The elements of rape are: "(a) That the accused committed an act of sexual intercourse; and (b) That the act of sexual intercourse was done by force and without consent." Para. 45b(1), Part IV, Manual, *supra* (1995 ed.).[2] It has long been recognized that a person who commits rape "necessarily commits an assault." *United States v. Headspeth*, 2 USCMA 635, 636, 10 CMR 133, 134 (1953); *see United States v. Schoolfield*, 40 MJ 132, 137 n. 7 (CMA 1994) (indecent assault is lesser-included offense of rape).

The elements of assault with intent to commit rape are: "(1) That the accused assaulted a certain person; (2) That, at the time of the assault, the accused ... intended to commit rape ...; and (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in

the armed forces or was of a nature to bring discredit upon the armed forces." Para. 64b, Part IV, Manual, *supra* (1995 ed.)

In *Foster*, 40 MJ at 143, this Court held that the third element of offenses under Article 134 is an implied element in the enumerated Articles. Thus, an offense under Article 134 can be a lesser-included offense of an offense under an enumerated Article, notwithstanding the requirement under Article 134 to prove that the conduct was prejudicial or service-discrediting.

Comparing the elements of the present offenses, we hold that the assault with intent to commit rape is included in the rape in this case because the assault is the force required by the second element of rape.[3]

◼ We turn next to the question of waiver. Ordinarily, multiplicity is raised by a motion to dismiss under RCM 907(b)(3). In *United States v. Lloyd*, 46 MJ 19 (1997), this Court held that a multiplicity issue is waived by an unconditional guilty plea unless it rises to the level of plain error. Multiplicity is grounded in the Double Jeopardy Clause. *Teters*, 37 MJ at 373. Double-jeopardy claims are waived if not raised at trial. RCM 907(b)(2)(C); *United States v. Collins*, 41 MJ 428 (1995). Accordingly, we now hold that multiplicity is waived by failure to raise the issue by a timely motion to dismiss.

◼ The final question is whether the multiplicious conviction in this case is plain error. In *Lloyd*, 46 MJ at 23, this Court, relying on *United States v. Broce*, 488 U.S. 563, 575, 109 S.Ct. 757, 765, 102 L.Ed.2d 927 (1989), held that multiplicity issues may overcome waiver if the specifications are " 'facially duplicative' that is, factually the same." Applying the "facially-duplicative" test, we conclude that

---

2. Prior to Executive Order No. 12960, § 4h, i, and j, 60 Fed.Reg. 26656 (May 17, 1995), effective June 10, 1995 (§ 5, 60 Fed.Reg. 26657), there was a third element listed in paragraph 45b(2)—"That the female was not the accused's wife[.]" However, the Code was amended effective October 23, 1992, to delete this element from 10 USC § 920. Pub.L. No. 102–484, div. A., title X, §§ 1066(c) and 1067, 106 Stat. 2506. *See United States v. Smith*, 13 USCMA 105, 110, 32 CMR 105, 110 (1962) (Manual provision cannot

"contravene any portion of the Code"). The rape was committed on October 23, 1994, and trial was held on June 26–27, 1995.

3. We are not confronted with an aggravated assault, involving an additional element of using a dangerous weapon or intentionally inflicting grievous bodily harm. Para. 54b(4)(a) and (b), Part IV, Manual for Courts–Martial, United States (1995 ed.). Thus, we need not address whether an aggravated assault would be included in rape, because that issue is not before us.

the assault specification in this case facially duplicates the rape specification because it merely describes the force used to commit the rape. Accordingly, we hold that appellant's conviction of both offenses was plain error and requires dismissal of the lesser-included offense. We further hold, however, that appellant was not prejudiced with respect to sentencing, because the military judge treated the offenses as a single offense for sentencing.

### Decision

The decision of the United States Air Force Court of Criminal Appeals as to the Additional Charge and its specification (assault with intent to commit rape) is reversed. The findings of guilty thereon are set aside and the Additional Charge and its specification are dismissed. In all other respects, the decision below is affirmed.

Chief Judge COX and Judge SULLIVAN concur.

EFFRON, Judge (concurring):

I concur in the majority opinion but write separately to suggest an alternative approach to address the significant amount of time and effort devoted to multiplicity litigation, which frequently produce results that do not have a significant impact on the interests of either an appellant or the Government, regardless of who prevails on appeal.

### I. *Background*

Multiplicity litigation has been marked by instability in doctrine and *ad hoc* resolution of cases, reflecting military justice considerations that increase the potential for trials involving multiple charges. The concept of multiplicity involves two separate concerns: first, the constitutional and statutory prohibitions against double jeopardy; and second, the impact of multiple charges growing out of the same transaction or series of transactions on the exercise of discretion with respect to charging and sentencing.

### A. Constitutional Concerns

The Fifth Amendment to the Constitution provides that no person shall "be subject, for the same offense, to be twice put in jeopardy of life or limb," a doctrine that also is reflected in Article 44, Uniform Code of Military Justice, 10 USC § 844. *See also* RCM 907(b)(2)(C), Manual for Courts–Martial, United States (1995 ed.). Double jeopardy not only prohibits successive trials for the same offense; it also prohibits separate convictions for the same offense at the same trial. *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *United States v. Teters,* 37 MJ 370, 373 (CMA 1993).

The double-jeopardy aspect of multiplicity has spawned extensive litigation concerning whether two nominally separate offenses are, in fact, the same offense. Over the years, the Manual for Courts–Martial, this Court, and other courts have developed, revised, rejected, and regenerated a variety of tests for multiplicity, as well as for whether a claim of multiplicity has been waived by failure to make a timely motion at trial.

In this regard, commentators have expressed significant frustration at both the volume of multiplicity litigation and the inability of the courts to develop stable and consistent tests for appellate review. *See, e.g.,* Barto, *Alexander the Great, the Gordian Knot, and the Problem of Multiplicity in the Military Justice System,* 152 Mil. L.Rev. 1 (Spring 1996); Young, *Multiplicity and Lesser–Included Offenses,* 39 A.F. L.Rev. 159 (1996); Herrington, *Multiplicity in the Military,* 134 Mil. L.Rev. 45 (Fall 1991). This has led to recommendations for legislative and regulatory action, as well as to suggestions for new judicial approaches. *See, e.g.,* Barto, *supra* at 28–30 (recommending that the President establish a "Table of Equivalent Offenses"); *see also United States v. Turner,* 28 MJ 556 (CGCMR 1989) (urging Code Committee and Joint–Service Committee on Military Justice to examine multiplicity).

### B. Tests for Evaluating Claims of Multiplicity

Very early, the Manual provided a test for multiplicity that rings familiar today: "The offenses are separate if each offense requires proof of an element not required to prove the other." Para. 76*a* (8), Manual for Courts–

Martial, United States, 1951. This language was consistent with the decision of the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), which adopted a statutory-elements test [1] for multiplicity. The 1969 version of the Manual did not carry this elements test forward, however, and permitted findings of guilty "without regard to whether the offenses are separate." *See* para. 74*b* (4), Manual for Courts–Martial, United States, 1969 (Revised edition).

The major revision of the Manual for Courts–Martial in 1984 provided broad standards for determining multiplicity for findings. Multiplicious specifications were defined in terms of alleging "the same offense," "necessarily included in the other," and describing "substantially the same misconduct in two different ways." RCM 907(b)(3)(B), Discussion, Manual for Courts–Martial, United States, 1984. That guidance remains unchanged in the current edition of the Manual. *See* RCM 907(b)(3)(B), Discussion, Manual, *supra* (1995 ed.).

Military case law also has adopted a variety of different tests over the years. In *United States v. Baker,* 14 MJ 361, 366–70 (1983), this Court reviewed our earlier treatment of this issue and set out a three-step approach to the multiplicity analysis: (1) Was there an initial unreasonable multiplication of charges? (2) Was it proper to find appellant guilty of two offenses? (3) Could appellant be separately punished for each offense? A reading of this Court's relevant opinions over the 10 years following *Baker,* however, indicates a struggle in the application of that approach.

In *United States v. Teters, supra,* we sought uniformity and clarity by looking to civilian precedent. Concluding that "the time ha[d] passed for a separate military-law doctrine," 37 MJ at 376, the Court cited *Blockburger* and announced that the "test is to be applied to the elements of the statutes violated and not to the pleadings or proof of these offenses." *Id.* at 377. We stated that once the *Blockburger* "separate elements test" has been satisfied, separate convictions

and punishment are authorized. *Id.* at 377–78. Only 2 years later, however, the multiplicity analysis was expanded beyond *Blockburger.* In *United States v. Weymouth,* 43 MJ 329 (1995), this Court recognized that the historical significance of pleadings, the policy to try all known charges in a single proceeding, and the incentive to multiply charges because of the military sentencing scheme supported an "elements/pleadings" approach to military multiplicity issues, in deviation from civilian practice.

### C. Tests Concerning Waiver of Multiplicity Claim

In addition to lack of stability in the tests for identifying multiplicity, we also have employed varying standards for determining whether the issue of multiplicity has been waived. *See* RCM 905(e).

In a non-multiplicity context involving the issue of double jeopardy, the Court early on recognized the "general rule" that, absent "unusual circumstances," "a claim of former jeopardy must be raised before the conclusion of the trial or it is waived." *United States v. Schilling,* 7 USCMA 482, 483, 22 CMR 272, 273 (1957). In a wave of post-*Baker* cases, however, the Court granted relief without even mentioning whether trial motions had been made—and, consequently, without explicit reference to plain error. The Court clarified its treatment of those cases in *United States v. Holt,* 16 MJ 393, 394 (1983), in which the Court observed:

> In cases in which application of the *Baker* standard has compelled a conclusion that findings were multiplicious, we have viewed as plain error the failure of the trial or intermediate appellate courts to dismiss the included offenses. In such instances, we have not hesitated to grant relief, even though the defense had not complained of multipliciousness at trial or on appeal.

Waiver absent plain error continues to be the approach today. *See United States v. Carroll,* 43 MJ 487, 488 (1996). In contrast to the pre-*Holt* cases, however, the Court now is open in its search for plain error. *Accord*

---

1. *See* 43 MJ 65, 67 n. 2 (1995).

*United States v. Lloyd,* 46 MJ 19 (1997). This rule is consistent with federal civilian practice. *See United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)(double-jeopardy objections may be waived or forfeited passively by failure to object).

## II. *Multiplicity Considerations Unique to the Military Justice System*

I recognize this Court's obligation to articulate clear standards for reviewing issues involving multiplicity. I have no illusion, however, that a significant reduction in the volume of multiplicity litigation can be produced solely as a result of enhanced clarity. Multiplicity analysis involves an *ad hoc,* case-by-case assessment of factual circumstances and the relationship of those facts to the elements of two or more court-martial offenses. Given the wide variety of charges that are available to punish similar misconduct under the Code, no readily available formula has been developed to date that would simplify multiplicity analysis.

Although the issue of multiplicity can arise in civilian trials,[2] the volume and complexity of multiplicity litigation in the military setting appears to be much greater than in the civilian community. The differences may well reflect the unique functions of a military justice proceeding. A civilian criminal trial is intended primarily to determine guilt or innocence with respect to a particular incident or related series of incidents and, in the event of a guilty finding, to determine whether the person should be confined or fined. Although a military trial has the same goals, it also is concerned with the efficient maintenance of good order and discipline.

As a result, it is a common military practice to try all known offenses in the same proceeding, even if the offenses are substantially unrelated. *See Weymouth,* 43 MJ at 335–36; *see also* RCM 307(c)(4). In addition to the traditional criminal law punishments of confinement and fines, a military sentencing

proceeding is equally concerned with punishments that can affect an individual's military status—*e.g.,* a discharge, a reduction in rank, or a forfeiture of pay. Given the impetus to maintain good order and discipline, to try all known offenses at once, and to relate those offenses to the individual accused's military status, there is a much greater likelihood of multiple charges, even arising from a single incident, in military trials than in civilian proceedings.

The Discussion accompanying RCM 307(c)(4) contains the following admonition:

> What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person. *See* RCM 906(b)(12) and 1003(c)(1)(C). For example, a person should not be charged with both failure to report for a routine scheduled duty, such as reveille, and with absence without leave if the failure to report occurred during the period for which the accused is charged with absence without leave. There are times, however, when sufficient doubt as to the facts or the law exists to warrant making one transaction the basis for charging two or more offenses. In no case should both an offense and a lesser included offense thereof be separately charged.

*See also* RCM 601(e)(2) concerning referral of several offenses.

The Discussion, however, does not establish a legally binding limitation. Drafters' Analysis, Manual, *supra* at A21–3. As a result, even when "[w]hat is substantially one transaction" is transformed into multiple charges that arguably reflect "an unreasonable multiplication of charges," an accused is not guaranteed relief at trial absent a demonstration that the charges are, in fact, multiplicious as a matter of law.

Even when charges apparently are multiplicious, the military judge has discretion to allow the charges to stand during trial—at least pending a determination of guilt or

---

2. *See Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); *United States v. Woodward,* 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985); *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952); *see also United States v. Teters,* 37 MJ 370, 373 n. 1 (1993).

innocence—to meet exigencies of proof. *United States v. Morris*, 18 MJ 450 (CMA 1984); *United States v. Stegall*, 6 MJ 176 (CMA 1979); *United States v. Fortney*, 12 MJ 987 (AFCMR 1982); *United States v. Croom*, 1 MJ 635 (ACMR 1975); *see also* RCM 907(b)(3)(B). Ultimately, if findings of guilty are entered on both charges, the military judge should dismiss one of the charges. *United States v. Zupancic*, 18 MJ 387 (CMA 1984). During sentencing, where a charge is not clearly multiplicious, the military judge often will endeavor to ameliorate what appears to be an unreasonable multiplication of charges by determining that the charges should be considered multiplicious for sentencing. *United States v. Traxler*, 39 MJ 476, 480 (CMA 1994); *see also* RCM 1003(c)(1)(C).

As a result, the same word—"multiplicious"—has been used to describe two different matters: (1) a non-discretionary legal limit on offenses during findings; and (2) a discretionary decision by the military judge to combine offenses during sentencing. In that regard, the President could help reduce the potential for confusion by using a term other than "multiplicious" to describe offenses combined by a military judge as a matter of discretion during sentencing. *See* Art. 36, UCMJ, 10 USC § 836.

### III. *A Proposed Approach to Appellate Review Addressing the Interests of the Parties*

Appellate consideration of multiplicity cases typically involves one of two circumstances:

(1) review of a determination by the military judge that the charges were not multiplicious for either findings or sentence; or

(2) review of a determination by the military judge that the multiple charges are not multiplicious for findings in circumstances where the military judge decides to treat the charges as a single offense during sentencing.

In the second circumstance, an accused on appeal typically will seek dismissal of one of the charges. When this Court has responded by ordering dismissal of a charge, we

implicitly have recognized that prejudice from multiplicious findings extends to the finding, not just to the sentence. *See Holt*, 16 MJ at 393. More recently, we expressly have focused on the constitutional and statutory double-jeopardy rights of an accused to not carry two convictions for what is essentially a single offense. *See United States v. Harwood*, 46 MJ 26, 28–29 (1997), citing *Rutledge v. United States*, 517 U.S. 860, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), and *Ball*, 470 U.S. at 856, 105 S.Ct. at 1668.

In view of the responsibility of appellate defense counsel to review the record of trial thoroughly, to raise all issues that reasonably could lead to relief for the client, and to call matters to the attention of the appellate courts pursuant to *United States v. Grostefon*, 12 MJ 431 (CMA 1982), there is substantial appellate litigation concerning findings multiplicity, even though the practical effect of such litigation may be minimal in many cases. Even when an appellant prevails, the sentence usually is not changed, and that appellant remains convicted of a serious charge. The only effect is that a lesser charge is removed from his or her record. Accordingly, while it legally may be compelled, there is little reason to believe that, from a practical perspective, removal of the lesser charge will have a significant impact on an appellant's future prospects or endeavors.

The Government has been reluctant either to concede error or to take other steps that would moot multiplicity issues. The primary concern appears to be that dismissal of a less-serious charge could put the Government's interests at risk if, on appeal, the more-serious charge is dismissed. I note, however, that if a rehearing on the greater offense is authorized, double jeopardy does not bar retrial on either the greater or the lesser charge where an appellant is successful on appeal. *United States v. Ball*, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896). The Government's interest is not a double-jeopardy concern but a practical concern. The Government is reluctant to agree to dismissal of a lesser charge, run the risk of losing the greater offense during fur-

ther appeal, and then be put to the time and expense of a new trial when the conviction of the lesser offense was obtained lawfully.

In my view, this problem could be remedied if appellate authorities (*i.e.,* the Courts of Criminal Appeals and this Court) were to enter a "conditional dismissal" of a colorably multiplicious charge under which the less-serious charge would be dismissed without prejudice to: (1) considering the facts surrounding the lesser offense as matters in aggravation with respect to the sentence; and (2) reinstatement of the dismissed charge before the case becomes final should the more-serious charge be dismissed. There is the potential to substantially reduce appellate litigation in this area, without prejudice to either party, if appellate authorities—in the interest of judicial economy—were to dismiss conditionally lesser charges in any case involving a colorable allegation of multiplicity and no perceptible impact on the sentence.

### IV. *Application of the Proposal to the Present Case*

#### A. The Competing Views of the Parties

The case before us illustrates the potential benefits of such an approach. The issues at trial revolved around different versions of events between appellant and the victim regarding the victim's consent. The Government presented evidence that appellant forcibly dragged the victim down the hallway of his apartment from his living room to his bedroom and then raped her. Appellant was charged with two separate offenses: assault with intent to commit rape and rape.

During his closing argument on the merits, trial counsel acknowledged that "both charges ar[o]se out of the same incident, the same conduct that occurred on that night...." Although defense counsel did not raise the issue of multiplicity for either findings or sentence, the military judge *sua sponte* commented prior to the sentencing arguments of counsel:

> By the way, I considered the two offenses multiplicious for sentencing purposes without elaborating the many theories that that in my opinion is appropriate. I'll consider

the two offenses but one offense for sentencing purposes. Proceed please.

Neither counsel offered comment or objection to this ruling.

In support of his appellate contention that the findings are multiplicious, appellant points out that the President has indicated in the Manual that assault with intent to commit rape—an offense set out by the President under the General Article of the Uniform Code, Article 134, 10 USC § 934—is a lesser-included offense of rape. *See* para. 45d(1)(b), Part IV, Manual, *supra* (1995 ed.). Moreover, in light of this Court's precedent that assault with intent to commit rape and attempted rape are multiplicious, at least where the facts demonstrate a continuous course of conduct, *see United States v. Gibson,* 11 MJ 435 (CMA 1981), appellant argues that it would be illogical to hold that assault with intent to commit rape is not a lesser-included offense of the completed offense of rape. Given this relationship, he contends that the military judge's failure to treat the charges as one for findings was plain error because the offenses were multiplicious for findings. *See Weymouth,* 43 MJ at 329; *United States v. Schoolfield,* 40 MJ 132 (CMA 1994).

The Government, on the other hand, contends that the offenses are not multiplicious. According to the Government, the assault is based upon appellant's dragging his victim down the hallway, throwing her on the bed, and pinning her down, which makes the assault offense complete at that time. The rape was based upon the facts that occurred thereafter. *See United States v. Edwards,* 35 MJ 351 (CMA 1992). The Government argues that, under these circumstances, where the assault and the rape are based on different facts, they are neither lesser-included nor multiplicious. *See United States v. Neblock,* 45 MJ 191 (1996). Alternatively, even if not separate, the Government takes the position that failure to treat them as a single offense for findings was not clear and obvious error, *see United States v. Fisher,* 21 MJ 327 (CMA 1986), so appellant's failure to raise the issue at trial forfeited his appellate complaint. *See* RCM 905(e) and 907(b)(3)(B); *Carroll,* 43 MJ at 487.

This case well illustrates the difficulty of achieving any level of comfort and confidence in the task of formulating and articulating principles of multiplicity that will lead unerringly to rational results in particular cases. The Government points to this Court's recent decision in *United States v. Oatney*, 45 MJ 185, 188 (1996), in which a majority offered the following view:

> Moreover, the pragmatic or realistic comparison approach of [*United States v.*] *Foster* [, 40 MJ 140 (CMA 1994),] still requires, at the very least, a conclusion that the greater offense could not possibly be committed without committing the lesser offense. *See United States v. Schoolfield,* 40 MJ at 137 (rape and indecent acts); *United States v. Foster,* 40 MJ at 146 (sodomy and indecent acts).

On the one hand, there are likely to be few circumstances in which a person could commit rape without, in the process, assaulting the person with intent to rape, given the essence of an assault being an offensive touching. On the other hand, the assault with intent to commit rape that is charged need not necessarily be the offensive physical touching that is inherent in the course of accomplishing the rape. *See, e.g., United States v. Hicks,* 24 MJ 3 (CMA 1987); *United States v. Watkins,* 21 MJ 224 (CMA 1986).

The Government argues that the assault was complete when appellant dragged his victim down the hall, threw her on the bed, and pinned her hands down. Under the Government's theory, throwing the victim onto the bed and pinning her hands down, immediately prior to removing her clothes and raping her, would constitute an assault that is separate from the rape. Theoretically, each of the acts—dragging her down the hall, throwing her onto the bed, and pinning her hands down—could be viewed as a separate assault with intent to commit rape. In that regard, there could have been far more than two charges in this case, with little practical end to the possibilities for charging multiple offenses.

### B. Judicial Considerations

Military judges usually have little difficulty arriving at sensible conclusions as to whether two or more findings should be treated as one for purposes of sentencing. In the case before us, for example, the military judge treated these offenses as multiplicious for sentencing while declining to "elaborat[e on] the many theories" that, in his opinion, made such treatment "appropriate." Yet, if two convictions truly do grow out of "the same conduct, even if sentenced under only one, ... the second conviction, even if it results in no greater sentence, is an impermissible punishment." *Ball,* 470 U.S. at 861, 865, 105 S.Ct. at 1671, 1673.

Because *Ball* (1985) does not permit us to ignore the findings, even when the offenses have been treated as multiplicious for sentencing, the interests of appellate judicial economy suggest the need to develop a more practical approach to claims of multiplicious findings. Accordingly, at least where: (1) the case involves a purported lesser offense, (2) there is a colorable basis for the claim of findings' multiplicity, and (3) the claim, if granted, would not result in sentence relief, appellate courts should order a "conditional dismissal" in the interests of judicial economy. The dismissal would become effective when direct review becomes final in the manner described in Article 71(c), UCMJ, 10 USC § 871(c). Such a disposition would be appropriate, for example, in cases either where the military judge has treated the offenses in issue as multiplicious for sentencing or where the sentence would be affirmed under application of the principles articulated in *United States v. Sales,* 22 MJ 305, 307–08 (CMA 1986), and *United States v. Suzuki,* 20 MJ 248, 249 (CMA 1985). The procedure described above would protect the interests of an appellant with respect to former-jeopardy concerns and would protect the interests of the Government in the event that the remaining charge is dismissed during further review.

In my view, the power to order such a conditional dismissal is well within the inherent authority of appellate courts. In order to minimize appellate litigation, however, it would be preferable for the President expressly to authorize this procedure in the Manual for Courts–Martial. *See* Art. 36. In

addition, as noted in Part II, the President could enhance the clarity of the law in this area by using a term other than "multiplicious" (*e.g.,* consolidation) to describe offenses that are combined by a military judge as a matter of discretion during sentencing.

CRAWFORD, Judge (dissenting):

I would apply waiver. In *United States v. Lloyd,* 46 MJ 19, 20 (1997), this Court held that "the Court of Criminal Appeals erred as a matter of law in establishing a 'new bright line rule' concerning the forfeiture of all multiplicity claims not raised at trial." This Court recognized that there may be a "passive waiver." *Id.* at 22. In addition, we noted that where indecent acts and rape

specifications are not "facially duplicative," a guilty plea forecloses raising a multiplicity issue. *Id.* at 20.

The offenses in this case are not facially duplicative. One, assault with intent to commit rape, requires a specific intent. The other, rape, requires a general intent.

It is difficult to find error in this case that "affect[s] substantial rights" as required under the plain-error doctrine. *United States v. Olano,* 507 U.S. 725, 735, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993). Appellant is not threatened with trial for another act arising out of the same incident. The conviction will not affect his parole eligibility. Finally, the judge treated the offenses as multiplicious for sentencing purposes.