# CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 JONATHAN J. BLAIR**
**United States Army, Appellant**

ARMY 20110846

Headquarters, 2nd Infantry Division
T. Mark Kulish, Military Judge
Colonel Jeffrey D. Pedersen, Staff Judge Advocate (pretrial)
Lieutenant Colonel Paula I. Schasberger, Staff Judge Advocate (post-trial)

For Appellant: Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA (on second supplemental brief); Lieutenant Colonel Peter Kageliery, Jr., JA; Major Jacob D. Bashore, JA (on supplemental brief); Lieutenant Colonel Imogene M. Jamison, JA; Lieutenant Colonel Peter Kageliery, Jr., JA; Major Jacob D. Bashore, JA (on original brief).

For Appellee: Lieutenant Colonel Amber J. Roach, JA; Major Daniel D. Maurer, JA (on second supplemental brief); Lieutenant Colonel Amber J. Roach, JA; Major Katherine S. Gowel, JA; Captain Daniel D. Maurer, JA (on supplemental and original brief).

29 August 2013

------------------------------------
OPINION OF THE COURT
------------------------------------

HAIGHT, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his plea, of indecent conduct, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2006 & Supp V 2011), *amended by* 10 U.S.C. § 920 (2012) [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge and confinement for eighteen months. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge and confinement for eleven months. The convening authority awarded appellant forty-five days of confinement credit.

Appellant's case is before this court for review pursuant to Article 66, UCMJ. Appellate counsel assigns three errors to this court and appellant personally raises matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). The second assignment of error merits discussion but no relief. The remaining assignments of error and those matters personally raised by appellant pursuant to *Grostefon* are without merit.

## BACKGROUND

On 7 February 2011*, appellant and Private (PVT) AA discussed the possibility of the two having sex that night, before PVT AA was set to depart Korea the next day. That night, the two attended a party in the barracks where PVT AA consumed alcohol. Appellant danced and flirted with PVT AA throughout the evening and was aware of her significant alcohol consumption. At some point during the party, appellant made a fist-pumping motion that mimicked a train conductor to another servicemember, U.S. Navy Petty Officer (PO) Shawn Bradley. The Petty Officer understood this gesture to indicate that appellant and he would engage in sexual intercourse with PVT AA "simultaneously or in quick succession." Private AA was unaware appellant had signaled PO Bradley and had not told appellant she consented to sexual intercourse with PO Bradley.

After leaving the party and while appellant and PVT AA walked to appellant's room, PVT AA noticed PO Bradley was following them. Regarding this third party, PVT AA, albeit in a diminished state, did implore appellant multiple times, "whatever he is doing, don't allow him to touch me." Each time, appellant affirmed he would not let anybody else touch her and provided reassurance by repeatedly stating, "I got you girl." However, appellant did not tell PO Bradley to stop following them and did not prevent him from entering the room with appellant and PVT AA.

Once inside his barracks room, appellant engaged in sexual intercourse with PVT AA in full view of PO Bradley and fully aware of his presence. Private AA was initially unaware PO Bradley was even in the room but after he approached them and attempted to place his penis in PVT AA's mouth as she was having sex with appellant, she rebuffed PO Bradley's efforts and pushed him away. At some point, another soldier, Specialist (SPC) Kirk Vogt, entered the room and also observed appellant and PVT AA engaging in sexual intercourse. Again, appellant was aware of SPC Vogt's presence but did not stop or request that he leave the room. In fact, PVT AA once again asked appellant to not let anybody else touch her, a request with which appellant again assured PVT AA he would comply.

However, after ejaculation, appellant abandoned PVT AA and went to the bathroom. Petty Officer Bradley then had sexual intercourse with PVT AA, followed by SPC Vogt. Appellant returned from the bathroom while SPC Vogt was

*Corrected

2

having sex with PVT AA. Upon seeing appellant and realizing she was engaged in sexual intercourse with somebody other than appellant, PVT AA struggled and cried out, "[s]top, get him off me." Appellant did finally end up assisting PVT AA and pushing SPC Vogt against a dresser.

While also charged with crimes such as conspiracy and aggravated sexual assault, appellant entered into a pretrial agreement to only plead guilty at his general court-martial to indecent conduct, in violation of Article 120, UCMJ, for having sexual intercourse in the presence of others. Appellant was sentenced to a bad-conduct discharge and confinement for eighteen months. While the pretrial agreement capped the confinement at twelve months, the convening authority ultimately approved the bad-conduct discharge and confinement for eleven months.

For his role in this incident, SPC Vogt was also tried by a general court-martial, but he was convicted of the more serious offense of aggravated sexual assault. His adjudged sentence was a dishonorable discharge and three years of confinement. The same convening authority as in this case reduced the confinement by one month but otherwise approved the adjudged sentence.

Also based on this incident, PO Bradley was originally charged with similar assaultive crimes. However, he negotiated a pretrial agreement with his armed service's convening authority, the commander of III MEF Headquarters Group, III Marine Expeditionary Force, under the terms of which he agreed to plead guilty to the indecent conduct of engaging in sex in the presence of others in exchange for a referral to a Summary Court-Martial. As a result of his low-level court-martial, PO Bradley was sentenced to restriction for thirty days and reduction to the grade of E-4. His convening authority suspended the reduction but approved the restriction.

Before this court, appellant now complains his sentence is disproportionately severe when compared to the punishment received by his co-actor, PO Bradley. As such, appellant requests this court disapprove his bad-conduct discharge and sentence to confinement.

## LAW AND DISCUSSION

This court may "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." UCMJ art. 66(c). "Article 66(c)'s sentence appropriateness provision is a sweeping congressional mandate to ensure a fair and just punishment for every accused." *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005) (internal quotation omitted). The Court of Appeals for the Armed Forces (CAAF) has stressed the importance of this court's role in evaluating sentence appropriateness to ensure "uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001).

We make such determinations in light of the character of the offender, the nature and seriousness of his offenses, and the entire record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citing *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 106-07, 27 C.M.R. 176, 181 (1959)). We are not required to "engage in sentence comparison with specific cases 'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)).

At this court, appellant bears the burden of demonstrating that PO Bradley's case is "closely related" to appellant's case and that the sentences are "highly disparate." *Id.* If successful, "then the [g]overnment must show that there is a rational basis for the disparity." *Id.*; *United States v. Durant*, 55 M.J. 258, 260 (C.A.A.F. 2001). "Sentence comparison does not require sentence equation." *Durant*, 55 M.J. at 260. In cases alleged to be highly disparate, "the test . . . is not limited to a narrow comparison of the relative numerical values of the sentences at issue, but also may include consideration of the disparity in relation to the potential maximum punishment." *Lacy*, 50 M.J. at 289. We have a great deal of discretion in determining whether a particular sentence is appropriate but we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 148 (C.A.A.F. 2010); *Lacy*, 50 M.J. at 288; *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988).

*Closely Related and Highly Disparate Sentences*

We must first determine if appellant has met his burden that the cases to be compared are closely related. Closely related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Lacy*, 50 M.J. at 288. In this case, we find appellant has met his burden of proving his co-actor's case is closely related. Appellant, PO Bradley, and SPC Vogt all engaged in an indecent course of conduct with the same victim; that is, in the barracks, while in each other's view and presence, they engaged in sex with a fellow servicemember who was intoxicated to some level. All three were initially charged with both assaultive crimes as well as indecent conduct in that their sexual activity was open and notorious. While each faced individual courts-martial, all faced trials stemming from a common incident.

Next, we must determine if appellant has shown the sentences in the closely related cases to be highly disparate. We note here that because the co-actors were tried at different levels of court-martial, this could appear to involve an issue of "differences in initial disposition rather than sentence uniformity." *United States v. Noble*, 50 M.J. 293, 294-95 (C.A.A.F. 1999). However, as both appellant and PO

4

Bradley were tried, convicted, and sentenced, this is not an instance where "[t]here is no court-martial record of findings and sentence that can be compared, which [would mean] that the issue of sentence uniformity is not present." *Noble*, 50 M.J. at 293. Petty Officer Bradley pleaded guilty to indecent conduct and was ultimately sentenced to thirty days restriction and a suspended one-grade reduction. However, appellant, who like PO Bradley only pleaded guilty to the indecent conduct charge, received a federal conviction and was sentenced to a punitive discharge and confinement for eighteen months, albeit only eleven months of confinement was approved. Therefore, we find appellant has also met his burden to show these sentences to be highly disparate.

*Rational Basis for the Disparity*

The burden now shifts to the government to demonstrate a rational basis exists to justify the difference in the relevant sentences. We find three strong and cogent reasons for any variation in the relative uniformity of appellant's and PO Bradley's sentences. Before detailing those reasons, we address any notion that a cross-services comparison would be inappropriate.

If co-actors are in different services and fall under different convening authorities, this may factor into any sentence comparison but does not preclude it. In the past, service courts have expressed some reluctance to compare sentences across services. Specifically, the Air Force Court of Criminal Appeals has found:

> . . . . While there are certain disciplinary ideals and needs which are common to the Profession-at-arms as a whole, the several services which comprise the United States Armed Forces have separate and diverse missions which dictate different needs and emphases on the many facets of good order and disciplinary (sic). The morale, welfare, and good order and discipline needs, and specific areas of emphases thereof, will differ for a fighter wing when compared to a logistics or training center and vice versa. This factor grows when expanded to the various services. The commander of an air force base located near a metropolitan area will have far different good order and discipline needs than a commander of an Army Post with a different mission, or a commander of a naval vessel sailing in some remote part of the world.

*United States v. Rencher*, 1998 WL 88628, at *5 (A.F. Ct. Crim. App. 20 Feb. 1998). *See also United States v. Turner*, 28 M.J. 556 (C.G.C.M.R. 1989) (determining that comparing Coast Guard cases with cases from the other military services would lead that reviewing court into a morass from which there would be no escape).

These cautions were expressed at a time before the military's superior court's further guidance on this issue in *Lacy* and *Sothen*. *See Lacy*, 50 M.J. at 288; *Sothen*, 54 M.J. at 296. While we agree that the impact of certain crimes may differ according to the perpetrator's service, unit, location, military occupational specialty, and assigned duties, this impact is but one factor in the analysis, but not conclusive of whether the analysis should be conducted in the first place. In today's environment of joint bases, joint deployments, joint units and task forces, joint commissions, and joint hearings, we no longer fear entering the "morass" of cross-service sentence comparison when appropriate.

Accordingly, we now turn to the rational bases for the disparate outcomes in the closely related cases at hand. First, appellant's charges were preferred against him on 5 April 2011 and referred to general court-martial on 13 June 2011. Appellant and the convening authority entered into a pretrial agreement on 8 September 2011 wherein appellant agreed to plead guilty to indecent conduct at his general court-martial in exchange for a confinement cap of twelve months and disapproval of any dishonorable discharge. During the pretrial processing of appellant's court-martial, on 15 June 2011, appellant was found guilty at a Field Grade Article 15, UCMJ, hearing and received extra duty for 45 days, restriction for twenty-six days, forfeiture of $733.00 pay for one month, and reduction to the grade of E-1 (from then E-3). This nonjudicial punishment was administered for appellant's failure to repair on 11 April 2011, wrongfully going off-post while his pass privileges were suspended on 7 May 2011, and neglectfully losing his military identification card on 1 June 2011. This nonjudicial punishment was included in the stipulation of fact, entered as aggravation evidence, and was expressly agreed upon as appropriate for consideration when fashioning an appropriate sentence. On the other hand, unlike appellant, there is no indication that PO Bradley engaged in any further misconduct warranting official action pending his upcoming trial.

Second, clearly a main reason for the disparity found here is a result of PO Bradley's case being referred to a summary court-martial. Obviously, the potential maximum punishment varies greatly depending on the forum. This difference in the respective maximum punishments is a proper consideration when comparing disparate sentences. *See Lacy*, 50 MJ at 289. Nevertheless, appellant asserts, in essence, it was unfair for PO Bradley to be tried by the Marine Corps at a summary court-martial when the Army elected to try appellant at a general court-martial. This complaint rings somewhat hollow in light of our superior court's observation, "[t]he military justice system is highly decentralized. Military commanders stationed at diverse locations throughout the world have broad discretion to decide whether a case should be disposed of through administrative, nonjudicial, or court-martial channels." *Lacy*, 50 M.J. at 287. Surely, if the proper exercise of this discretion extends to courses of action other than court-martial, it must also extend to the decision as to which of the three levels of court-martial the charges are to be

referred. Accordingly, variance in the exercise of discretion does not equate to an abuse of that discretion.

Simply put, PO Bradley was able to negotiate a more favorable pretrial agreement with his convening authority than appellant was able to with his.[*] Even accepting PO Bradley's treatment as relatively lenient, we find no impropriety or unlawful, invidious, or impermissible discrimination by either convening authority. Hence, the disparity in disposition does not seriously detract from the appearance of fairness and integrity in military justice nor does it "rise to the level of an obvious miscarriage of justice or an abuse of discretion." *United States v. Snelling*, 14 M.J. 267, 269 (C.M.A. 1982) (quoting *United States v. Olinger*, 12 M.J. 458 460 (C.M.A. 1982)). "Ordinarily, leniency towards one accused does not necessarily flow to another, nor should it. Disparity that results from a convening authority's . . . judgment does not necessarily entitle a service person to some form of appellate relief." *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994). *See also Durant*, 55 M.J. at 264 (Effron, J., dissenting) (reasoning "that a sentence adjustment is not required where the sentence at issue is found to be objectively appropriate and . . . the disparity is largely the result of the coactor's relatively lenient sentence"). In fact, any perceived leniency afforded PO Bradley by his convening authority is readily explained by PVT AA's victim preference letter in that case:

> . . . I hereby elect to express my preference not to testify in Okinawa against [PO Bradley].
>
> I understand that my preference not to participate in this case may mean that [PO Bradley] is charged with a lesser offense, and that his case may be dealt with at a lower forum. I think that this is an appropriate outcome . . . .

---

[*] A certified true copy of the "Summary Court-Martial Package" of PO Bradley, to include: the record of trial; the initial charges which were withdrawn; the signed and introduced summary court-martial memorandum of pretrial agreement; the summary of proceedings signed by the summary court-martial officer; and the admitted victim preference letter by PVT AA, are before this court over appellate defense counsel's objection. We specifically note that even absent consideration of any portions of that package not already introduced by appellate defense counsel, our "closely-related" case comparison and ultimate decision would be the same and still result in this court affirming appellant's findings and sentence. We further note that judicial notice of relevant portions of the summary court-martial record was an available option. *See United States v. Smith*, 56 M.J. 653, 660 n.7 (Army Ct. Crim. App. 2001).

> . . . But to the extent that my views affect the command's decision, I believe the best outcome would be for [PO Bradley] to plead guilty to a lesser offense at a lower forum. I have relocated to CONUS and for personal reasons I am hoping to move on from these events as soon as I am finished testifying in the two related Army cases.

Third, one factual distinction between appellant's conduct and that of his co-actors provides perhaps the most compelling reason for the disparity. It was appellant, not PO Bradley and not SPC Vogt, in whom PVT AA placed her trust, a trust which appellant almost immediately thereafter unabashedly betrayed. Rather than keeping his promises of "I got you, girl," he most assuredly did not "have her back." These facts and circumstances surrounding appellant's offense were properly considered in aggravation. *See* Rule for Courts-Martial 1001(b)(4).

Accordingly, we find appellant's case to be closely related to that of PO Bradley, their disposition and sentences to be highly disparate, but there are good and cogent reasons that constitute a rational basis for that disparity. Furthermore, apart from the comparative analysis, we find appellant's disposition and sentence, both adjudged and approved, to be appropriate and not excessively severe.

## CONCLUSION

On consideration of the entire record, submissions of the parties, and those matters personally raised by appellant pursuant to *Grostefon*, we hold the findings of guilty and the sentence as approved by the convening authority are correct in law and fact.

Accordingly, the findings of guilty and the sentence are AFFIRMED.

Senior Judge COOK and Judge CAMPANELLA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

8