*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, DALY, and GROSS
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Shaun J. HERNANDEZ**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202300060**

_____

Decided: 30 July 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Yong J. Lee

Sentence adjudged 16 November 2022 by a special court-martial tried at Marine Corps Base Camp Pendleton, California, consisting of officer and enlisted members. Sentence in the Entry of Judgment: reduction to E-1, confinement for 3 months, and forfeiture of $1,222.00 pay per month for 12 months.[1]

---

[1] Appellant received 4 days of confinement credit.

For Appellant:
*Lieutenant Aiden J. Stark, JAGC, USN*
*Lieutenant Commander Leah M. Fontenot, JAGC, USN*

For Appellee:
*Lieutenant Rachel Noveroske, JAGC, USN*

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

————————————

PER CURIAM:

A special court-martial convicted Appellant, pursuant to his pleas, of one specification of larceny and one specification of unauthorized absence, in violation of Articles 121 and 86, Uniform Code of Military Justice (UCMJ).[2]

This case is before us on direct appeal submitted by Appellant pursuant to Article 66(b)(1), UCMJ. Appellant asserts two assignments of error (AOEs), which we rephrase as follows: (1) the sentence was inappropriately severe; and (2) there was an inexplicable sentence disparity between Appellant's sentence and the sentence received by another Marine in a closely related case. We find no prejudicial error and affirm.

## I. BACKGROUND

On 16 April 2022, Appellant, Lance Corporal (LCpl) Hoopii, and several other Marines traveled to the Marine Corps Exchange (MCX) aboard Marine Corps Base Camp Pendleton, California. After legally purchasing some items, Appellant placed a FitBit Smartwatch, GoPro Camera, and Oculus Quest into MCX bags and walked out of the store. In total, Appellant stole $1,099.97 worth of property.

Upon being suspected of shoplifting, Appellant was transferred to the legal and separations platoon with conditions on his liberty. Having previously made plans for his family to visit for Memorial Day weekend, Appellant routed a

---

[2] 10 U.S.C. §§ 886, 921.

request to spend the weekend with his family off base. The request was denied. Appellant then went to two other members of his chain of command with his liberty request. Again, his request was denied. Despite the denials, on 28 May 2022, Appellant left base without authorization.[3] Appellant returned to base on 30 May 2022, several hours after receiving a phone call from his command.

At Appellant's special court-martial, LCpl Hoopii testified on behalf of the Government. Pursuant to a plea agreement, LCpl Hoopii pleaded guilty to two specifications of larceny, in violation of Article 121, UCMJ. One of the specifications concerned the 16 April 2022 larceny he committed with Appellant. Lance Corporal Hoopii also pleaded guilty to stealing a laptop, blankets, and clothing from the same MCX a few weeks later. The total value of the items LCpl Hoopii stole exceeded $2,000.00. Pursuant to his plea agreement, LCpl Hoopii was sentenced to reduction to E-1, confinement for 4 months, and forfeiture of $610.00 pay per month for 4 months.

In contrast, Appellant pleaded guilty to a single specification of larceny and single specification of unauthorized absence without the protection of a plea agreement. Unlike LCpl Hoopii, Appellant requested sentencing by members. At his court-martial, Appellant made an unsworn statement apologizing for his actions and stating he would "give anything to be allowed to rise in the ranks" and continue serving as a Marine.[4]

The members sentenced Appellant to reduction to E-1, confinement for 3 months, and forfeiture of $1,222.00 per month for 12 months. Of note, the members did not sentence Appellant to a bad-conduct discharge.

Additional facts necessary to resolving the AOEs are provided below.

## II. DISCUSSION

### A. Appellant's sentence was not inappropriately severe.

Appellant argues his sentence was inappropriately severe. Specifically, Appellant argues that twelve months of forfeitures—totaling $14,664—in addition to being reduced to E-1, is an unjust punishment for the theft of $1,099.97 worth of property and a three-day unauthorized absence.

---

[3] R. 113-14.

[4] R. 442.

*1. Standard of Review and Law*

We review sentence appropriateness de novo.[5] This Court may only affirm "the sentence or such part or amount of the sentence as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[6] In exercising this function, we seek to ensure that "justice is done and that the accused gets the punishment he deserves."[7] Our review requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[8] In making this assessment, we analyze the record as a whole.[9]

*2. Analysis*

Appellant told the members he "would give anything" to remain in the Marine Corps, effectively expressing his desire to avoid a punitive discharge. On appeal, now that such a discharge is no longer on the table, Appellant has changed his tune. He asks that we reduce his forfeitures to no more than $1,222.00 per month for three months.

As Appellant was tried by a special court-martial, the maximum punishment Appellant faced for the larceny conviction was 12 months' confinement, reduction in grade to E-1, forfeiture of two-thirds pay per month for 12 months, a fine, and a bad-conduct discharge.[10] At trial, the Government argued for "a bad-conduct discharge, 6 months' confinement, and reduction in rank [sic] to E-1." Appellant's counsel requested a sentence limited to "30 days in the . . . brig, reduction in rank, and forfeitures."[11]

Taking at face value Appellant's statement that he "would give anything" to avoid a bad-conduct discharge, we are tempted to ask: What is the value of a bad-conduct discharge? While relative equivalencies may be found between

---

[5] *United States v. Lane,* 64 M.J. 1, 2 (C.A.A.F. 2006).

[6] Article 66(d)(1), UCMJ.

[7] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[8] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[9] *Healy*, 26 M.J. at 395-97.

[10] Rule for Courts-Martial (R.C.M.) 201(f)(2)(B)(i), and Articles 19(a) and 121(d)(1)(C), UCMJ.

[11] R. at 458.

some punishments,[12] our superior Court has described punitive discharges as "qualitatively different from other punishments,"[13] as "it cannot be known what effects a particular punitive discharge will have on a particular accused."[14] And "[t]he variety of factors bearing upon the relative severity of a punitive discharge and other punishments [has] tended to discourage the establishment of a fixed table of substitutions."[15] Accordingly, we resist the temptation to perform a mathematical exercise to determine whether the "anything" Appellant was willing to give to avoid a punitive discharge reasonably included forfeiture of two-thirds pay for 12 months. Instead, we simply note that his statement to the members "factors in our decision today."[16]

Appellant stole nearly $1100 from the MCX, whose profits directly support his fellow Marines. The only excuse he offered for this theft was "I didn't have enough money at the time . . . and it was my birthday."[17] He took the items not out of any necessity, but for his "enjoyment and pleasure."[18] Then, despite facing prosecution for the larceny, having clear conditions on his liberty, and twice being specifically denied permission to leave the base, he chose to absent himself in order to spend time with his family.

Given the sum of his misconduct, the relatively short confinement compared to the maximum he faced, and the fact his sentence did not include a punitive discharge, we are satisfied that his sentence was not inappropriately severe.

---

[12] *See* R.C.M. 305(k).

[13] *United States v. Josey*, 58 M.J. 105, 108 (C.A.A.F. 2003).

[14] *United States v. Mitchell*, 58 M.J. 446, 449 (C.A.A.F. 2003).

[15] *United States v. Hodges*, 22 M. J. 260, 262 (C.M.A. 1986) (quoting *United States v. Darusin,* 20 U.S.C.M.A. 354, 356, 43 C.M.R. 194, 196 (1971)). We note, however, that our superior Court has stated that, "[c]onsidering the consequences of a bad-conduct discharge, we entertain no doubt that confinement at hard labor for six months and forfeiture of pay for a like period is a less severe penalty. . . ." *United States v. Brown*, 13 U.S.C.M.A. 333, 336, 32 C.M.R. 333, 336 (1962) (citations omitted).

[16] *United States v. Mora*, No. ARMY 20170270, 2018 CCA LEXIS 605, at *6 (Army Ct. Crim. App. Oct. 5, 2018) (unpublished).

[17] R. at 111.

[18] R. at 111.

**B. There is a rational basis for the disparity in LCpl Hoopii's and Appellant's sentences.**

Appellant argues his case is closely related to LCpl Hoopii's, as they were a part of a "common scheme" and both pleaded guilty to stealing from the MCX on 16 April 2022.[19] And he claims an inexplicable disparity in sentencing exists because Appellant was sentenced to forfeit $1,222.00 for 12 months, while LCpl Hoopii was only required to forfeit $610.00 for 4 months. Appellant argues this disparity makes his own sentence inappropriately severe by comparison, as LCpl Hoopii was convicted of two specifications of larceny, rather than one, and stole roughly $1,000 more in property than did Appellant.

*1. Standard of Review and Law*

We review sentence appropriateness de novo[20] and generally without reference or comparison to sentences in other cases.[21] We will engage in sentence comparison only "in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases."[22]

When arguing for relief based on sentence disparity, an appellant must demonstrate "that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.' If the appellant meets that burden . . . then the Government must show that there is a rational basis for the disparity."[23] "Closely related" cases involve "offenses that are similar in both nature and seriousness or which arise from a common scheme or design."[24]

---

[19] Appellant's Br. at 18.

[20] *Lane*, 64 M.J. at 2.

[21] *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985).

[22] *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *Ballard*, 20 M.J. at 283).

[23] *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999).

[24] *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994); see also *Lacy*, 50 M.J. at 288 (examples of closely related cases include co-actors in a common crime, service members involved in a common or parallel scheme, or "some other direct nexus between the service members whose sentences are sought to be compared").

In assessing whether sentences are highly disparate, we are "not limited to a narrow comparison of the relative numerical values of the sentences at issue," but may also consider "the disparity in relation to the potential maximum punishment."[25]

Finally, co-conspirators are not entitled to similar sentences and disparity between them does not necessarily render one sentence inappropriate, "provided each military accused is sentenced as an individual."[26] This is so because the point of examining disparate sentences is not only to eliminate actual unfairness or injustice, but also to ensure the "appearance of fairness and integrity, without which the public, members of Congress, and service personnel will lose confidence in the military justice system."[27] An accused's inability to secure a plea agreement or more favorable plea agreement than a co-accused could serve as a rational basis for the disparity in sentence because "leniency towards one accused does not necessarily flow to another, nor should it. Disparity that results from a convening authority's . . . judgment does not necessarily entitle a service person to some form of appellate relief."[28]

### 2. Analysis

We will assume, without deciding, that Appellant's and LCpl Hoopii's cases are closely related and that the sentences are highly disparate.[29] Although there is clear overlap between the misconduct addressed by their respective courts-martial—specifically, the 16 April 2022 larceny offenses—each Marine pleaded guilty to additional, different misconduct. But, even assuming the cases are closely related and the sentences highly disparate, we find a rational basis for the disparity.

---

[25] *Lacy*, 50 M.J. at 289.

[26] *United States v. Durant*, 55 M.J. 258, 261 (C.A.A.F. 2001) (citations omitted).

[27] *Kelly*, 40 M.J. at 570.

[28] *Id. See also United States v. Blair*, 72 M.J. 720, 725-36 (Army Ct. Crim. App. 2013), *review denied,* 73 M.J. 209 (C.A.A.F. 2014).

[29] We note that Appellant's brief focuses almost exclusively on the respective forfeitures. But LCpl Hoopii was sentenced to one month of confinement more than Appellant. As we assume *arguendo* that the sentences are highly disparate, we need not analyze the relative equivalence of forfeitures and confinement.

The main—and, here, dispositive—difference is that LCpl Hoopii pleaded guilty pursuant to a plea agreement.[30] We do not know whether this involved a "race to the convening authority," but Appellant offers nothing to indicate that he, too, offered to enter into a plea agreement.[31]

In his plea agreement, LCpl Hoopii agreed, *inter alia:* to plead guilty; to testify against Appellant and two other Marines accused of larceny; to enter into a stipulation of fact; to waive all waivable motions; to waive an administrative discharge board; and to forego the presence of non-local witnesses at Government expense. In exchange, the convening authority agreed to refer LCpl Hoopii's case to a judge-alone special court-martial under Article 16(c)(2)(A), UCMJ, and to limit his punishment to a reduction to E-1, forfeiture of $610.00 pay per month for 4 months, and confinement between 4 and 5 months.

In sum, LCpl Hoopii exchanged benefits—time, money, certainty, cooperation—for limits on his potential punishment. This is the foundation of the plea agreement system. Conversely, Appellant did not provide the same benefits; he cannot expect the same sentence limitations. Here, we find that these facts alone sufficiently explain the difference in sentences.[32]

---

[30] Appellant did not move to attach LCpl Hoopii's Entry of Judgment but cited LCpl Hoopii's trial results in his brief. This Court considered the Entry of Judgment and plea agreement of Appellant's co-actor, documents outside Appellant's record of trial, for our analysis pursuant to *United States v. Jessie*, 79 M.J. 437, 440 (C.A.A.F 2020), where the Court of Appeals for the Armed Forces recognized the appropriateness of considering material from outside the record when "necessary for resolving issues raised by materials in the record." *Id.* at 444.

[31] By "race to the convening authority," we mean the situation where two co-accused are each willing to testify against the other, but only the first one to strike a deal with the convening authority will receive the benefit (or a better benefit) of a plea agreement.

[32] We note that the presence of a plea agreement in a closely related case does not constitute rational basis *per se*—rather, it was dispositive in this case given the unique facts, the relative closeness of the sentences, and the obvious benefits of LCpl Hoopii's plea agreement.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[33]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[33] Articles 59 & 66, UCMJ.