# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, PENLAND, and COOPER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E1 ZACKERY M. ARMSBURY**
**United States Army, Appellant**

ARMY 20230534

Headquarters, 1st Armored Division and Fort Bliss
Clay M. West and Javier E. Rivera-Rosario, Military Judges
Colonel Andrew D. Flor, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Captain Tumentugs D. Armstrong, JA (on brief).

For Appellee: Colonel Richard Gorini, JA; Major Marc B. Sawyer, JA; Major Austin L. Fenwick, JA (on brief).

4 April 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

COOPER, Judge:

A military judge, sitting as a general court-martial, convicted appellant, pursuant to his pleas, of one specification of assault consummated by a battery, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (2019) [UCMJ]. The military judge sentenced appellant to a bad-conduct discharge and 60 days of confinement, the minimum sentence authorized by his plea agreement. The convening authority approved the findings and sentence.

Appellant's one specified error to this court is that his sentence was inappropriately disparate with the companion case of Sergeant (SGT) ██. We agree and provide appropriate relief in the decretal paragraph.[1]

**BACKGROUND**

Appellant joined the U.S. Army on 3 August 2021 and arrived at Fort Bliss, his first duty assignment, on 8 February 2022. His unit was soon deployed to the Republic of Korea, where the incident occurred.

In the early morning hours of 8 May 2022, appellant was leaving a bar in the "Ville" near Camp Humphreys, with SGT ██ and Specialist (SPC) JW. The soldiers observed a commotion across the street involving a woman, her friends, and a group of belligerent and intoxicated men. The soldiers heard the woman shouting, accusing one of the men of sexually assaulting her. Appellant, SGT ██ and SPC ██ approached to offer help. The situation escalated and one of the men in the belligerent group pushed SPC ██ and put him in a chokehold. As SPC ██ tried to escape, appellant got involved to help. A fight ensued between the two groups of men and eventually one of the men, later identified as Lance Corporal (LCpl) ██, fell to the ground. While on the ground, SGT ██ violently kicked LCpl ██ in the head with his foot and LCpl ██ appeared to go unconscious. Subsequently, appellant kicked LCpl ██ in the head with his foot. Finally, SPC ██ approached the motionless body of LCpl ██ and struck him multiple times in the head and torso. The entire encounter was recorded on closed-circuit television (CCTV) and admitted into evidence at appellant's trial.

Appellant, SGT ██ and SPC ██ were ultimately charged with aggravated assault, maiming, and conspiracy, in violation of Article 128, 128a, and 81, UCMJ, respectively. Initially, SGT ██ and appellant were referred as companion cases to be tried together. After a joint arraignment, the cases were severed in accordance with Rule for Courts-Martial 906(b)(9).

Appellant entered into a plea agreement and pleaded guilty to assault consummated by a battery in exchange for dismissal of the other charges, a confinement range of 60 to 120 days, and a mandatory bad-conduct discharge. The military judge sentenced appellant to the minimum punishment authorized by the plea agreement.

---

[1] The Statement of Trial Results (STR) erroneously characterizes the "Finding/Disposition" of Charge I as "Not guilty, but Guilty of a Lesser Included Offense" and Charge II and The Additional Charge as "Not Guilty." Those blocks on the STR are hereby amended to reflect a response of "Dismissed to the excepted specification, guilty of a lesser included offense" for Charge I and "Dismissed" for Charge II and The Additional Charge.

At a general court-martial (GCM), in accordance with his plea agreement, SGT ▌pleaded guilty to the more serious offense of aggravated assault, in violation of Article 128, UCMJ, in return for dismissal of the other charges and a confinement limitation of 121 to 365 days. There was no mandatory punitive discharge in SGT ▌'s plea agreement. The same military judge who presided over appellant's court-martial sentenced SGT ▌to 121 days of confinement and reduction to E-2.[2]

At a special court-martial, in accordance with his plea agreement, SPC ▌pleaded guilty to assault consummated by a battery, in violation of Article 128, UCMJ, in exchange for dismissal of the other charges and a confinement limitation of 60 to 120 days. There was no mandatory punitive discharge in SPC ▌'s plea agreement. The military judge sentenced SPC ▌to 75 days of confinement and reduction to E-2.[3]

On appeal, appellant requests this court disapprove his bad-conduct discharge under our Article 66 sentence appropriateness authority to rectify his disproportionately severe sentence.

## LAW AND DISCUSSION

This court may "affirm only the sentence, or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved." UCMJ, art. 66(d)(1) (2018 & Supp. II 2020).[4] Article 66's "sentence appropriateness provision is a sweeping Congressional mandate to ensure a fair and just punishment for every accused." *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005) (internal quotations

---

[2] After granting defense appellate counsel's motion to take judicial notice of the record of trial in SGT ▌'s general court-martial, we reviewed and considered certain portions of that record, specifically the Statement of Trial results.

[3] We took judicial notice of, and reviewed, the STR in *United States v. Specialist Jacob L. Wynns*. "Our authority to take judicial notice of relevant portions of other pertinent records" in conducting sentence comparison analysis pursuant to our "Article 66, UCMJ, review is well established." *See United States v. Smith*, 56 M.J. 653, 659 n.7 (Army Ct. Crim. App. 2001) (citing *United States v. Durant*, 55 M.J. 258, 262 (C.A.A.F. 2001); *United States v. McElroy*, 40 M.J. 368, 369 n.1 (C.M.A. 1994) (other citations omitted)).

[4] This section of the UCMJ was subsequently modified by the National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 539E(d), 135 Stat. 1541, 1698 (2021), for all "sentences adjudged in cases in which all findings of guilty are for offenses that occurred after [27 December 2023]."

omitted). "The Court of Appeals for the Armed Forces (CAAF) has stressed the importance of this court's role in evaluating sentence appropriateness to ensure 'uniformity and evenhandedness of sentencing decisions.'" *United States v. Blair*, 72 M.J. 720, 723, (Army Ct. Crim. App. 2013) (quoting *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001)).

We are not required to "engage in sentence comparison with specific cases 'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). Before this court, appellant bears the burden of demonstrating SGT JH's case is "closely related" to appellant's case and the sentences are "highly disparate." *Id.* If successful, "then the Government must show that there is a rational basis for the disparity." *Id.*

Cases are considered "closely related" if they fit within at least one of the following three categories: (1) the servicemembers were "coactors involved in a common crime," (2) the servicemembers were "involved in a common or parallel scheme," or (3) there was "some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.*

Finally, while this court has "a great deal of discretion in determining whether a particular sentence is appropriate . . . we are not authorized to engage in exercises of clemency." *Blair*, 72 M.J. at 723.

Appellant has met his initial burden by demonstrating his case is closely related to SGT ██'s case; the government's brief arguing the contrary is absurd. Appellant and SGT ██ walked out of the bar together, engaged in a fight outside the bar together, and both soldiers kicked LCpl ██ seconds apart while he lay on the ground. Furthermore, the government charged appellant and SGT ██ with the same offenses, initially intended to prosecute them at a joint court-martial and arraigned them together. While the cases were ultimately severed, each faced a court-martial involving the same exact charges, from the same exact incident, in which they were simultaneously involved. Based on these factors, it is obvious appellant and SGT ██ were "coactors involved in a common crime" and their cases are closely related. *Lacy*, 50 M.J. at 288.

Next, we must determine if appellant has sufficiently demonstrated the sentences are highly disparate. Sergeant ██ pleaded guilty to the more severe charge of aggravated assault and did not receive a punitive discharge, whereas appellant pleaded to the lesser offense of assault consummated by a battery and did receive a bad-conduct discharge. We recognize the significant adverse stigma of a punitive discharge on the character of one's military service, the negative impact it will have in the future with regards to legal rights, employment opportunities, and social

acceptability, and the loss of substantial benefits from the Department of Veterans Affairs. Considering the severity and long-term effects of a punitive discharge, we find this alone makes the sentences highly disparate.

The burden now shifts to the government to demonstrate a rational basis to justify the difference in the relevant sentences. The government has failed.

After the *Blair* court found the cases involving appellant and a Navy co-actor closely related with highly disparate sentences, they considered the following factors in determining a rational basis existed to justify the difference: (1) appellant had aggravating evidence in the form of nonjudicial punishment, (2) appellant was convicted at a GCM, while the co-actor went to a summary court-martial, which significantly limited the potential sentence, and (3) appellant's misconduct was actually worse than his co-actor.[5] 72 M.J. at 724-26. None of those factors are present here, yet the government does offer three bases for the highly disparate sentences. None are persuasive, some are illogical.

First, the government argues in their brief that appellant kicked LCpl ▮ after he was already "out of the fight," making appellant's actions "gratuitous," and implying appellant's kick was therefore worse than SGT ▮'s kick. It was not. We have closely reviewed the CCTV video of the incident.

The video shows LCpl ▮ fall to the ground on his back, no longer participating in the fight. Sergeant ▮ then violently kicks LCpl ▮ in the head, his head drops to the ground, he is motionless, and "appears to go unconscious."[6] Next, appellant walks past LCpl ▮ and lightly kicks his head. Finally, SPC JW stands over the motionless body of LCpl ▮ and repeatedly strikes him in the head and torso until another individual drags SPC ▮ away. Watching the video and reading the Stipulation of Fact clearly demonstrate appellant's act was the least egregious of the three actors, all of whom physically assaulted a man on the ground and out of the fight. However, appellant was the only one who received a punitive discharge. Obviously, this is not a rational explanation to justify the disparity in his sentence.

Second, the government alleges in their brief appellant provided a short, unsworn statement, using part of his time to "complain" about the disparity in

---

[5] In *Blair*, the court found the victim placed her trust in appellant, as appellant had promised "I got you, girl." 72 M.J. at 726. However, "almost immediately thereafter [appellant] unabashedly betrayed" the victim, standing by while two other men had sexual intercourse with her. *Id.* These circumstances were properly considered as aggravating evidence to appellant's offense of indecent conduct. *Id.*

[6] The Stipulation of Fact states, "LCpl [▮] appears to go unconscious at this moment."

sentences, whereas SGT ███'s unsworn was much longer. The government fails to note the very first words out of appellant's mouth during his unsworn included an apology to LCpl ███ and to the Army for his behavior. Moreover, the length and content of an unsworn statement is irrelevant with respect to a mandatory, non-discretionary sentence term, like the punitive discharge here. This purported basis for the disparity is no more rational than the previous one.

Finally, the government's last-ditch effort in providing a reasonable factor to justify the disparate sentences is that appellant, as a brand-new soldier, did not have significant mitigation or rehabilitation evidence for the judge to consider compared to SGT ███ None of that matters in a situation where the terms of the plea agreement *did not give* the military judge discretion to weigh such evidence in determining whether a punitive discharge was even appropriate. Nonetheless, the government audaciously claims, "there is a rational basis for a military judge to see in one the potential to rehabilitate and in the other, one who failed to adapt in the first place to Army Values." This completely ignores the fact the military judge was prevented from making that differential evaluation, because the plea agreement required a punitive discharge.

This court recognizes sentence comparison is only one of many aspects of sentence appropriateness. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982). "Sentence appropriateness involves the judicial function of assuring justice is done and that the accused gets no more than the deserved punishment." *United States v. Martinez*, 76 M.J. 837, 841 (Army Ct. Crim. App. 2017) (quoting *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988)). "When we conduct a sentence appropriateness review, we review many factors to include: the sentence severity; the entire record of trial; appellant's character and military service; and the nature, seriousness, facts, and circumstances of the criminal course of conduct." *Id.* at 841-42.

Here, in addition to the sentence comparison analysis above, we have also considered appellant's status as a young soldier only three months into his first assignment; appellant's initial intent to help a distraught woman outside a bar; the attack on SPC ███ that immediately preceded the assault offense; appellant's observation of SGT ███'s violent kick to LCpl ███'s head; appellant's light kick to LCpl ███'s head using minimal force; appellant's plea of guilty to one charge and specification of assault consummated by a battery; the lack of injury evidence or any victim impact statement; and the lack of aggravation evidence in sentencing. Given all these factors, we hold appellant's approved sentence is not appropriate.

## CONCLUSION

The finding of guilty is AFFIRMED. Only so much of the sentence that provides for 60 days of confinement is AFFIRMED. The bad-conduct discharge is SET ASIDE.

Senior Judge FLEMING and Judge PENLAND concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court