*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

## UNITED STATES
Appellant

**v.**

## Zackery M. ARMSBURY, Private
United States Army, Appellee

**No. 25-0233**
Crim. App. No. 20230534

Argued January 28, 2026—Decided March 24, 2026

Military Judges: Clay M. West (arraignment) and
Javier E. Rivera-Rosario (trial)

For Appellant: *Captain Andrew T. Bobowski* (argued); *Colonel Richard E. Gorini* and *Major Stephen L. Harmel* (on brief).

For Appellee: *Captain Emily R. Ittner* (argued); *Colonel Frank E. Kostik Jr.*, *Lieutenant Colonel Kyle C. Sprague*, and *Major Peter M. Ellis* (on brief).

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS, Judge MAGGS, Judge HARDY, and Judge JOHNSON joined.

———————————

Chief Judge OHLSON delivered the opinion of the Court.

Appellee was charged with aggravated assault, maiming, and conspiracy. Pursuant to a plea agreement, he pleaded guilty to assault consummated by a battery in exchange for dismissal of the other charges, a confinement range of 60 to 120 days, and a mandatory bad-conduct discharge. The military judge accepted Appellee's plea, sentencing him to sixty days of confinement and a bad-conduct discharge. However, the United States Army Court of Criminal Appeals (CCA) set aside Appellee's discharge, finding it highly disparate when compared to the terms of his coactor's sentence, with no rational basis for that disparity. *United States v. Armsbury*, No. ARMY 20230534, 2025 CCA LEXIS 149, at *11, 2025 WL 1039382, at *5 (A. Ct. Crim. App. Apr. 4, 2025) (unpublished).

The Judge Advocate General of the Army certified two issues for our review pertaining to the CCA's decision in this case. In furtherance of this appeal, the Government now argues that the "Army [c]ourt exceeded its authority when they wielded their power under Article 66, UCMJ, and permitted Appellee to effectively renegotiate the terms of his plea deal on appeal."[1] Further, the Government argues that even if the Army court could exercise its Article 66, UCMJ, sentence review authority in this instance, it abused its discretion in setting aside Appellee's discharge. Appellee, on the other hand, supports and defends the actions of the Army court.

We hold that under the prior version of Article 66, a CCA has the authority to invalidate a provision in an adjudged sentence even if it is the product of a plea agreement.[2] Further, we hold that the CCA in the instant case

---

[1] Uniform Code of Military Justice, 10 U.S.C. § 866 (2018).

[2] Article 66 has been amended, 10 U.S.C. § 866 (2018 & Supp. III 2019-2022), but this affects only cases in which all findings of guilty are for offenses occurring after December 27, 2023. *See* National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 539E(f), 135 Stat. 1541, 1706 (2021). Because

did not abuse its discretion in finding that Appellee's sentence was highly disparate and that there was no rational basis for that disparity. Accordingly, we affirm the judgment of the CCA.

## I. Factual and Procedural Background

While stationed in Korea, Appellee concluded a night of drinking by heading back to post alongside Sergeant (SGT) JH and Specialist (SPC) JW. En route, they saw a woman yelling at a group of "belligerent" and "heavily intoxicated" men. As Appellee and his companions approached, SPC JW was pushed by someone in the group and one of the men tried to place him in a chokehold. SPC JW struggled to escape and a fight broke out.[3] In the fray, one of the other men in the group (later identified as Lance Corporal (LCpl) KC) was knocked to the ground. While he was lying there, SGT JH "violently" kicked LCpl KC in the head, appearing to knock him unconscious. *Armsbury*, 2025 CCA LEXIS 149, at *8, 2025 WL 1039382, at *4. Appellee followed suit and "lightly" kicked LCpl KC in the head, then left. *Id.*, 2025 WL 1039382, at *4. SPC JW, however, proceeded to strike LCpl KC multiple times.

As a result of this incident, Appellee was charged with aggravated assault, maiming, and conspiracy in violation of Articles 128, 128a, and 81, UCMJ, 10 U.S.C. §§ 928, 928a, 881 (2018). SGT JH was likewise charged with aggravated assault, maiming, and conspiracy. SPC JW was granted immunity to testify against Appellee and SGT JH, who were arraigned together and originally were to be tried together. Appellee then entered into a plea agreement, pleading guilty to assault consummated by a battery as a lesser included offense of aggravated assault. In exchange, the other charges and specifications were withdrawn and dismissed and the sentence to be adjudged was limited to a range of 60 to 120 days of confinement and a mandatory bad-conduct discharge. SGT JH, on the other hand,

---

Appellee's offense occurred in May 2022, the question of CCA authority under the amended Article 66 is not presented.

[3] The fracas was captured by a nearby CCTV camera.

pleaded guilty to aggravated assault in exchange for dismissal of the maiming and conspiracy offenses. His agreement provided for confinement between 121 and 365 days and discretion as to any other lawful punishment.

Appellee's plea was accepted by the military judge after a providence inquiry, including discussion of the severity of a bad-conduct discharge. Appellee was then sentenced to sixty days of confinement and a bad-conduct discharge. The convening authority took no action and judgment was entered. SGT JH's plea was also accepted, and he was sentenced to 121 days of confinement and a reduction in grade to E-2. No punitive discharge was adjudged.

## II. The CCA Appeal

Upon reviewing the appropriateness of Appellee's sentence pursuant to Article 66, UCMJ, the CCA noted that Appellee bore the burden of identifying a "closely related" comparator case in which a "highly disparate" sentence had been imposed. *Armsbury*, 2025 CCA LEXIS 149, at *5-6, 2025 WL 1039382, at *2. The CCA then concluded that Appellee had met this burden. Specifically, the Army court first found that SGT JH's case was closely related to Appellee's case because they "each faced a court-martial involving the same exact charges, from the same exact incident, in which they were simultaneously involved." *Id.* at *6, 2025 WL 1039382, at *3. The CCA then turned to the disparity issue and noted that SGT JH "pleaded guilty to the more severe charge of aggravated assault and did not receive a punitive discharge, whereas [Appellee] pleaded to the lesser offense of assault consummated by a battery and did receive a bad-conduct discharge." *Id.* at *7, 2025 WL 1039382, at *3. Highlighting the "significant adverse stigma of a punitive discharge," the CCA found "this alone makes the sentences highly disparate." *Id.*, 2025 WL 1039382, at *3.

The CCA next considered whether the Government had met its burden of providing a rational basis for the disparity. The Army court noted that none of the factors identified in *United States v. Blair*—aggravating evidence,

different levels of courts-martial (general vs. special), or worse conduct than the coactors—applied to Appellee's case. *Id.* at *7-8. 2025 WL 1039382, at *3 (citing 72 M.J. 720, 723 (A. Ct. Crim. App. 2013)). The CCA then opined that although the Government offered three bases for the highly disparate sentences, "None are persuasive [and] some are illogical." *Id.* at *8, 2025 WL 1039382, at *3.

The CCA rejected the Government's contention that Appellee's conduct was " 'gratuitous' " compared to that of his coactors, as the video and stipulation of fact "clearly demonstrate [Appellee's] act was the least egregious of the three actors." *Id.* at *8-9, 2025 WL 1039382, at *4. Next, the CCA was dismissive of the Government's contention that the difference in length and content of Appellee's unsworn statement at sentencing, as compared to SGT JH's, justified the disparity. The CCA first rejected the claim that there was any substantive difference between the two unsworn statements and then noted that "the length and content of an unsworn statement is irrelevant with respect to a mandatory, non-discretionary sentence term, like the punitive discharge here." *Id.* at *9, 2025 WL 1039382, at *4. Finally, the CCA found the alleged differences in "mitigation or rehabilitation evidence for the judge to consider" was irrelevant "where the terms of the plea agreement *did not give* the military judge discretion to weigh such evidence in determining whether a punitive discharge was even appropriate." *Id.* at *10, 2025 WL 1039382, at *4.

Having found the cases closely related and the sentences highly disparate without a rational basis to support that disparity, the CCA set aside Appellee's discharge and affirmed the sixty days of confinement. *Id.* at *11, 2025 WL 1039382, at *5.

### III. The Certified Issues

The Judge Advocate General of the Army certified two issues for our review:

> I. Whether the Army [c]ourt, pursuant to a "highly disparate" sentence theory, possessed the authority to set aside [Appellee's] bad[-]conduct

discharge when it was a negotiated term of the plea agreement.

II. Whether the Army [c]ourt abused their discretion in finding Appellee's sentence "highly disparate" and in setting aside Appellee's bad[-]conduct discharge.

*United States v. Armsbury*, 86 M.J. 270, 270-71 (C.A.A.F. 2025) (docketing notice of certificate of review).

## IV. Standard of Review

Questions of statutory construction, including articles under the Uniform Code of Military Justice, are reviewed by this Court de novo. *See, e.g.*, *United States v. Fetrow*, 76 M.J. 181, 185 (C.A.A.F. 2017). However, this Court's "review of decisions by the Courts of Criminal Appeals on issues of sentence appropriateness is limited to the narrow question of whether there has been an obvious miscarriage of justice or abuse of discretion." *United States v. Swisher*, 85 M.J. 1, 4 (C.A.A.F. 2024) (citation modified).

> An abuse of discretion occurs when the CCA's findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the CCA's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law.

*United States v. Behunin*, 83 M.J. 158, 161 (C.A.A.F. 2023) (citation modified).

## V. Discussion

The Government offers a bevy of arguments in support of its position that a CCA does not have the authority to modify a sentence that is the product of a plea agreement, and that even if it did, the CCA in the instant case abused its discretion when exercising that authority. We are not persuaded.

### A. Sentence Appropriateness Review of Plea Terms

The Government first argues that Article 66, UCMJ, should not be interpreted as authorizing a CCA to invalidate a sentence provision that is part of a plea agreement because that interpretation would place Article 66 "at odds

with" Article 53a, UCMJ, 10 U.S.C. § 853a (2018). However, a review of the text of Article 53a reveals that the conflict envisioned by the Government does not exist.

Article 53a(a) allows "the convening authority and the accused [to] enter into a plea agreement" which may include "limitations on the sentence *that may be adjudged.*" This italicized language indicates that the limitations on the sentence apply only to the court-martial itself. Article 53a(d) further provides that a plea agreement is binding as to "the parties . . . and the court martial." Once again, no mention of the CCAs or any limit on their review is present, and there is no basis for "read[ing] an implied repeal of the CCAs' vast powers" into Article 53a. *United States v. Kelly*, 77 M.J. 404, 407 (C.A.A.F. 2018).

Beyond these unsurmounted textual hurdles, the Government's position also runs headlong into this Court's precedent. We previously have held that even congressionally mandated minimum sentences do not limit the sentence appropriateness review authority of the CCAs. *Id.* at 408. Therefore, it would be incongruous indeed for this Court to now hold that an agreement between an accused and a convening authority could so constrain a CCA's authority. And just last term this Court held that when CCAs exercise their sentence appropriateness review authority, they "may . . . consider the context in which the parties reached the plea agreement," necessarily indicating that a CCA is not bound by the plea agreement's terms. *United States v. Arroyo*, 86 M.J. 89, 90 (C.A.A.F. 2025). The Government has provided us with no reason to reconsider these precedents.

For these reasons, we hold that pursuant to their broad sentence-review authority, CCAs operating under the prior version of Article 66 retain the ability to invalidate even bargained-for terms of a plea agreement, when appropriate.

### B. Abuse of Discretion

Having determined that CCAs maintain their review authority over all the provisions of a sentence resulting

from a plea agreement, this Court next concludes for the following reasons that the CCA did not abuse its discretion in finding (a) the sentences of Appellee and SGT JH were highly disparate and (b) there was no rational basis that justified this disparity.

First, the CCA articulated correct legal principles guiding its review. It noted that Appellee bore "the burden of demonstrating SGT JH's case is 'closely related' . . . and the sentences are 'highly disparate,'" and if Appellee met this burden, the burden then shifted to the Government to demonstrate "a rational basis for the disparity." *Armsbury*, 2025 CCA LEXIS 149, at \*5, 2025 WL 1039382, at \*2 (quoting *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999)). The CCA then correctly laid out the standard for finding cases "closely related" and noted that their discretion could not extend into "exercises of clemency." *Id.* at \*5-6, 2025 WL 1039382, at \*3 (internal quotation marks omitted) (quoting *Blair*, 72 M.J. at 723).

Second, the CCA did not abuse its discretion in finding that the punitive discharge alone made the sentences highly disparate. The Government avers that the CCA failed to properly weigh the collateral consequences SGT JH would face for his aggravated assault conviction, which is a "felony" (because it carries a maximum confinement of five years) as compared to Appellee who was convicted of an assault consummated by a battery which is a "misdemeanor" (because it carries a maximum confinement of six months). While no such distinction between a felony and a misdemeanor is drawn in the military justice system, we recognize the enhanced collateral consequences that may flow from the more serious conviction.[4] However, this mere fact does not mean that the CCA in the instant case was

---

[4] *See, e.g.*, *United States v. Martinez*, 122 F.3d 421, 426 (7th Cir. 1997) (UCMJ conviction for housebreaking as predicate violent felony under Armed Career Criminals Act); *Gourzong v. Att'y Gen.*, 826 F.3d 132, 134 (3d Cir. 2016) (special court-martial conviction as predicate felony for removal proceedings).

required to consider the potential for differing collateral consequences.

Third, the Government is also mistaken when it claims that the CCA abused its discretion by failing to recognize that although Appellee and SGT JH both faced the same punitive exposure at the outset of proceedings, Appellee ultimately received only sixty days of confinement and a discharge while SGT JH received a heftier 121 days of confinement. Although consideration of a "theoretical maximum sentence from withdrawn specifications" may be permissible in a sentence appropriateness review, *Arroyo*, 86 M.J. at 94, nothing mandates such a comparison here as between Appellee and SGT JH. Again, while such a factor *might* be relevant before a CCA, a CCA is not required to consider it, explain it, or give it decisive weight. *See United States v. Durant*, 55 M.J. 258, 261 (C.A.A.F. 2001) (finding no abuse of discretion even in the absence of "a considered, written opinion from the experienced judges").

And finally, we reject the Government's contention that the disparity in the sentences was necessarily rational because "SGT JH and Appellee possessed different military careers." To be sure, the CCA certainly *could* have used this factor as a rational basis for upholding the sentence disparity here, citing the fact that SGT JH's experience in the armed forces (and the Government's concomitant investment in him) made SGT JH more worthy of retention than Appellee. But the CCA alternatively could have reasoned that an experienced servicemember such as SGT JH should be held to a higher standard than a recent enlistee such as Appellee.[5]

At bottom, a CCA's sentence review authority is highly discretionary and the factors cited by the Government may "involve pertinent considerations on the question of sentence appropriateness, but they do not demonstrate that

---

[5] The Government in its CCA briefing conceded that Appellee "raises a fair point regarding the expectation of [a noncommissioned officer] versus a brand-new Soldier, however that argument cuts both ways."

the decision of the court below constituted an abuse of discretion." *United States v. Sothen*, 54 M.J. 294, 297 (C.A.A.F. 2001).

### C. Conclusion

In light of the foregoing, we find that the CCA's findings of fact were not clearly erroneous, that the CCA's decision was not influenced by an erroneous view of the law, and that the CCA acted within "the range of choices reasonably arising from the applicable facts and the law" when it concluded that Appellee's punitive discharge was highly disparate and that the Government did not provide a rational basis justifying that disparity. *Behunin*, 83 M.J. at 164 (internal quotation marks omitted) (quoting *United States v. Ayala*, 81 M.J. 25, 28 (C.A.A.F. 2021)). Therefore, we hold that the CCA did not abuse its discretion in setting aside Appellee's bad-conduct discharge.

### VI. Judgment

The judgment of the United States Army Court of Criminal Appeals is affirmed.